**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-00041-CMA

AHMED KHALFAN GHAILANI,

Plaintiff,

v.

JEFFERSON B. SESSIONS, III, United States Attorney General,
UNITED STATES ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK,
FEDERAL BUREAU OF INVESTIGATION,
OFFICE OF ENFORCEMENT OPERATIONS,
FEDERAL BUREAU OF PRISONS, and
JACK FOX, ADX Warden,

Defendants.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

---

Mr. Ghailani has not completed the mandatory exhaustion process for the only claim that remains in this case. Because exhaustion is a prerequisite to filing suit, Defendants are entitled to summary judgment.[1]

The Tenth Circuit found that Mr. Ghailani's claims related to his now-expired Special Administrative Measures ("SAMs") are moot. *Ghailani v. Sessions*, No. 15-

[1] Defendants file this motion for summary judgment addressing a failure to complete the mandatory exhaustion process in an effort to reach a "just, speedy, and inexpensive" resolution of this matter. Fed. R. Civ. P. 1. Depending on the Court's resolution of this motion and discovery, if any, Defendants may request the Court's permission to file a second motion for summary judgment at the conclusion of discovery. *See* CMA Civ. Practice Standard 7.1E(a). Following the remand of this case from the Court of Appeals, the Court has not yet set a date for the BOP to answer the Amended Complaint and, therefore, no answer has been filed at this time.

1128, Doc. 94 at 12; *see also id.* at 7-11 (instructing that Claims Two through Six should be dismissed as moot).[2] The Tenth Circuit agreed with this Court that it was proper to dismiss Mr. Ghailani's free-exercise claim, which the Tenth Circuit characterized as a broad challenge to the restriction on group prayer across the ADX—not a claim limited to the SAMs restriction on congregate prayer. *Id.* at 17 (concluding that "the district court properly dismissed Mr. Ghailani's First Amendment claim alleging that the prison violated his free exercise rights by not allowing him to pray Jumu'ah").

It is that same broadly construed group prayer claim that the Tenth Circuit allowed to go forward under the Religious Freedom Restoration Act ("RFRA"). The Court of Appeals found that Mr. Ghailani "challenged not only the SAMs but also the policy created specifically to target [his] ability to freely exercise his religion." *Id.* at 12 (internal quotation marks omitted). Thus, the "policy" at issue in this case now is the purported restriction on group prayer—separate and apart from any SAMs restrictions—that applies to Mr. Ghailani as an inmate confined in the general population of the ADX.

While the Tenth Circuit found that Mr. Ghailani had done enough to plead this RFRA claim, *id.* at 17-18, *pleading* a claim is not the same as *exhausting* it. The

---

[2] With the dismissal of the SAMs claims, the Court should also dismiss from the case the Attorney General, the United States Attorney's Office, the Office of Enforcement Operations, and the Federal Bureau of Investigation. Those persons or entities are involved in decisions concerning the imposition and extension of SAMs, but are not charged with deciding the appropriate conditions of confinement in a BOP facility. Nor is it necessary to retain Warden Fox as a separately named Defendant in a case where an inmate seeks only injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The BOP is the appropriate defendant for the remaining claim.

undisputed material facts show that Mr. Ghailani has not exhausted any claim concerning any ADX restriction on group prayer that applies to non-SAMs inmates who are confined in the general-population units of the prison—including the phase of the ADX Step-Down Program to which Mr. Ghailani has now progressed. Mr. Ghailani is now housed in one of the least-restrictive housing units in the ADX. In that step-down unit, he can engage in congregate prayer with his fellow Muslim inmates.

Because Mr. Ghailani has not exhausted any claim about any restriction on group prayer at the ADX in general or in his housing unit in particular, ADX officials had no opportunity to hear Mr. Ghailani's grievance about any such restriction, to investigate his complaint, or to attempt to resolve it. Supreme Court authority requires that he not be allowed to litigate a claim in this Court until he has exhausted it.

## CLAIM AND DEFENSE UPON WHICH JUDGMENT IS SOUGHT

### I. Mr. Ghailani has not exhausted a claim challenging any restriction on group prayer at the ADX.

#### A. Burden of proof and elements of the defense

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of administrative remedies in actions challenging prison conditions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "This exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Kikumura v. Osagie*, 461

F.3d 1269, 1281 (10th Cir. 2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). An inmate must exhaust all administrative remedies that are available to him before seeking judicial review of the decision. *See, e.g.*, *United States v. Wilson*, 503 U.S. 329, 335-36 (1992); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1236-37 (10th Cir. 2005). The Supreme Court has reaffirmed that "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Ross v. Blake*, _ U.S. _, 136 S.Ct. 1850, 1856-57 (2016) (The PLRA's exhaustion requirement "suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account."). Defendants bear the burden to prove the affirmative defense of failure to exhaust administrative remedies. *See Jones*, 549 U.S. at 212; *see also Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007).

The BOP maintains a four-step administrative remedy program, which permits inmates to raise grievances. 28 C.F.R. §§ 542.10–542.19. In Step 1, the inmate must attempt informal resolution of his complaint with the appropriate BOP staff member by filing an Informal Resolution Form ("BP-8"). *Id.* § 542.13. Assuming no satisfactory resolution is achieved, the inmate must file an Administrative Remedy Request ("BP-9") within 20 calendar days of the event giving rise to the grievance. *Id.* § 542.14. If the inmate is dissatisfied with the outcome at Step 2, he must file an appeal ("BP-10") to the Regional Director within 20 days. *Id.* § 542.15(a). If the Step 3 appeal is unsuccessful, the inmate must file an appeal ("BP-11") to the General Counsel of the BOP within 30

days. *Id.* § 542.15(a). The General Counsel has 40 days to respond to the BP-11 appeal, and may extend the response time by 20 days. 28 C.F.R. § 542.18.

To properly exhaust, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules.'" *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). The grievance complaining of the alleged wrong must provide the prison with "a fair opportunity to consider the grievance" and also must enable prison officials to "tak[e] appropriate measures to resolve the complaint internally." *Kikumura*, 461 F.3d at 1283 (internal quotation marks and citations omitted). In the Tenth Circuit, a prisoner must exhaust his administrative remedies *before* filing his civil action. *Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012) ("Since the PLRA makes exhaustion a precondition to filing a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency.") (citing 42 U.S.C. § 1997e(a)); *Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002)); *see also Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999).

The Supreme Court has recognized the "advantages of administrative review[.]" *Woodford*, 548 U.S. at 89. "[E]xhaustion protects 'administrative agency authority,'" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)); *accord*, *e.g.*, *Campbell v. Jones*, 684 F. App'x 750, 753 (10th Cir. 2017) ((upholding dismissal of case for failure to exhaust administrative remedies, and

observing that the prisoner "did not avail himself of a final appeal to the [Chief Medical Officer], who might have rectified the error and granted his requests") (citing *Woodford*)). Exhaustion further "promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Id.* (citations omitted). "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *McCarthy*, 503 U.S. at 145. Exhaustion procedures "give the agency a fair and full opportunity to adjudicate their claims." *Id.*

**B. Element that Mr. Ghailani cannot overcome: He has not initiated, let alone completed, the exhaustion process for the claim before this Court.**

The undisputed evidence shows that Mr. Ghailani did not exhaust any grievance regarding the restrictions on prayer in any ADX general-population unit—including the Transitional Unit of the ADX Step-Down Program where he is now confined.

**1. Undisputed facts about Mr. Ghailani's ADX confinement**

1. When Mr. Ghailani arrived at the ADX on June 7, 2011, he was subject to SAMs. Movant's App. (hereafter "M. App.") 4, Chapman Decl. ¶ 6; M. App. 19, Quarters.

2. Mr. Ghailani was housed in the ADX Special Security Unit while he was on SAMs. *Id.*

3. On June 10, 2015, Mr. Ghailani's SAMs expired and were not renewed. M. App. 4, Chapman Decl. ¶ 7.

4. The same day, Mr. Ghailani was moved from the Special Security Unit to "E Unit," an ADX general-population unit. M. App. 4, Chapman Decl. ¶ 8; M. App. 19, Quarters.

5. Since then, Mr. Ghailani has progressed through the ADX Step-Down Program for general-population inmates. M. App. 5, Chapman Decl. ¶¶ 9-10; M. App. 25-26, Step-Down Institution Supplement.

6. On June 6, 2017, Mr. Ghailani was transferred to the Transitional Unit of the ADX Step-Down Program for general-population inmates, where he is incarcerated at this time. The Transitional Unit of the Step-Down Program, also known as "B/B Unit Phase I," is physically located at the United States Penitentiary – High Security in Florence, Colorado. M. App. 5, Chapman Decl. ¶ 10; M. App. 19, Quarters; M. App. 26, Step-Down Institution Supplement.

7. As a participant in the ADX Step-Down Program in the Transitional Unit, Mr. Ghailani is allowed to be outside his cell approximately 30 hours per week. M. App. 6, Chapman Decl. ¶ 12; M. App. 26, Step-Down Institution Supplement.

8. During his out-of-cell time, Mr. Ghailani has unrestrained physical contact with other inmates. He and his fellow inmates participate in indoor-activity time and outside-recreation time. *Id.*

9. During the times designated for indoor activities, Mr. Ghailani can participate in group prayer with his fellow inmates in a specially designated room on B/B

Unit. M. App. 6, Chapman Decl. ¶¶ 14, 15; M. App. 39, August 22, 2017, Religious Activities Procedures Bravo-Bravo.

### 2. The sole administrative remedy Mr. Ghailani exhausted sought the removal of his former SAMs and had nothing to do with any restriction on group prayer in ADX general-population units.

10. Since June 7, 2011, Mr. Ghailani has filed nine administrative remedies related to six different complaints, or series, of administrative remedies. M. App. 9, Chapman Decl. ¶ 23; M. App. 41-46, Administrative Remedy Generalized Retrieval.

11. Mr. Ghailani has completed the exhaustion process for only one administrative-remedy series: Number 669441. That administrative-remedy series sought the "removal of all ongoing restrictions imposed on me in accordance with Special Administrative Measures (S.A.M.)[.]" M. App. 9, Chap. Decl. ¶ 23; M. App. 48-55, Administrative Remedy No. 669441.

12. In the institutional-level filing, Mr. Ghailani wrote:

> For the following reasons, I respectfully request for removal of all ongoing restrictions imposed on me in accordance with Special Administrative Measures (S.A.M.) [:]
>
> (1) For over seven years I have been incarcerated under federal custody. For all this time I have commited [sic] absolutely nothing that suggested that there continues to be substantial risk.
>
> (2) The ongoing S.A.M's restrictions imposed on me without meaningful proceeding or due process of law where I might challenged [sic] the imposition of such punishment or secure my right to be free from this abuse.
>
> (3) The ongoing S.A.M's restrictions imposed on me based solely on hypothetical speculations and analytical

assessments that are unsupported by credible proof.

(4) The ongoing S.A.M.'s restrictions are additional punishment on me above that imposed by the sentencing judicial court.

(5) Each and every S.A.M's restriction is relevant to quastions [sic] about negative psychological impact they have on inmate if imposed for prolonged duration of time. And each and every restriction is violating my fundamental constitution [sic] rights. Those rights including 1st, 5th, 6th, 8th, and 14th amendments.

Dated: Dec. 15, 2011

Respectfully submitted,
/s/ Ahmed K. Ghailani
Ahmed K. Ghailani

M. App. 9-10, Chapman Decl. ¶ 24; M. App. 53-54, Administrative Remedy No. 669441-F1.

13. At the Regional level of the grievance process, Mr. Ghailani wrote:

> I am not satisfied with the respond [sic] to my request for Administrative Remedy because it does not address any basis of my request. Accordingly, I hereby reinstate and incorporate those complains [sic] into this appeal and simply requesting removal of all ongoing S.A.M. restriction [sic] imposed on me.

M. App. 10-11, Chapman Decl. ¶ 27; M. App. 50, Administrative Remedy No. 669441-R1.

14. At the Central Office level of the grievance process, Mr. Ghailani wrote:

> I am dissatisfied with the reason of denial to my Regional Administration [sic] Remedy Appeal.

M. App. 11, Chapman Decl. ¶ 27; M. App. 48, Administrative Remedy No. 669441-A1.

15. The exhaustion process for administrative remedy series no. 669441 was completed at the Central Office level on November 9, 2012. M. App. 11, Chapman Decl. ¶ 28; M. App. 49, Administrative Remedy No. 669441-A1.

16. Administrative remedy series 669441 is the only administrative complaint Mr. Ghailani has ever exhausted. M. App. 9, Chapman Decl. ¶ 23.

17. Mr. Ghailani never mentioned any prison restriction other than those contained in the SAMs at any step of the remedy process for administrative remedy series no. 669441.[3] M. App. 10, Chapman Dec. ¶ 25.

18. Mr. Ghailani filed six other administrative remedies in connection with five other administrative-remedy series, none of which were exhausted or had anything to do with group prayer. M. App. 11-12, Chapman Decl. ¶¶ 30-33; M. App. 57-80, Administrative Remedies, M. App. 57-80, Administrative Remedy No. 895392-F1, Administrative Remedy No. 784116-R1, Administrative Remedy No. 784116-F1, Administrative Remedy No. 768925-F1, Administrative Remedy No. 758449-F1, and Administrative Remedy No. 666328-F1.

**C. The BOP has had no opportunity to resolve Mr. Ghailani's complaint.**

19. Mr. Ghailani has never filed an administrative remedy that raised a complaint about lack of access to group prayer in an ADX general-population unit,

[3] Even in that administrative remedy series, Mr. Ghailani did not state that his complaint was about the SAMs restriction on group prayer, making it unclear whether he exhausted a group-prayer claim related to his former SAMs. Regardless, the Court need not resolve that question in light of the Tenth Circuit's finding that the SAMs claims are moot.

including any remedy challenging access to group prayer in the Transitional Unit where he is currently housed. M. App. 12, Chapman ¶ 34.

20. Because Mr. Ghailani has filed no such remedy, the BOP has never investigated or attempted to resolve that claim. *Id.*

**CONCLUSION**

Mr. Ghailani has never exhausted an administrative remedy challenging his current conditions of confinement, or any conditions remotely like them. The Court should enter judgment in favor of all Defendants and dismiss this case in its entirety.

Respectfully submitted on September 22, 2017.

ROBERT C. TROYER
Acting United States Attorney

s/ *Susan Prose*
Susan Prose
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Tel: (303) 454-0100
Fax: (303) 454-0404
E-mail: susan.prose@usdoj.gov

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2017, I directed that the foregoing document be served on the following non-CM/ECF participants in the manner indicated:

Ahmed Khalfan Ghailani (U.S. Mail)
Reg. No. 02476-748
FLORENCE ADMAX USP
P.O. Box 8500
Florence, CO 81226

Agency counsel (by email)

*s/ Susan Prose*
Susan Prose