**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-00041-CMA

AHMED KHALFAN GHAILANI,

Plaintiff,

v.

JEFFERSON B. SESSIONS, III, United States Attorney General,
UNITED STATES ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK,
FEDERAL BUREAU OF INVESTIGATION,
OFFICE OF ENFORCEMENT OPERATIONS,
FEDERAL BUREAU OF PRISONS, and
JACK FOX, ADX Warden,

Defendants.

---

**DEFENDANTS' APPENDIX – CMA CIV. PRACTICE STANDARD 7.1E(d)**

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-00041-CMA

AHMED KHALFAN GHAILANI,

Plaintiff,

v.

JEFFERSON B. SESSIONS, III, United States Attorney General,
UNITED STATES ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK,
FEDERAL BUREAU OF INVESTIGATION,
OFFICE OF ENFORCEMENT OPERATIONS,
FEDERAL BUREAU OF PRISONS, and
JACK FOX, ADX Warden,

Defendants.

---

**DECLARATION OF TODD CHAPMAN**

---

I, Todd Chapman, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby declare as follows relating to the above-captioned matter:

## I. Background

1. I am the Executive Assistant for the United States Department of Justice, Federal Bureau of Prisons (Bureau) facility known as the Federal Correctional Complex, Florence, Colorado (FCC Florence). FCC Florence consists of a minimum-security Federal Prison Camp, a medium-security Federal Correctional Institution, a United

States Penitentiary – High Security, and the United States Penitentiary – Administrative Maximum (ADX).

2. I was named Executive Assistant for FCC Florence in August 2015. As Executive Assistant for FCC Florence, I am responsible for working with the Associate Wardens and department heads in developing plans, policies, and programs for institution management. Additionally, I administer the Bureau's Administrative Remedy Program for FCC Florence. *See* 28 C.F.R. §§ 542.10-542.19. As the Administrative Remedy Coordinator, I am familiar with all four levels of the inmate grievance procedure created by the Administrative Remedy Program. I am responsible for signing any rejection notices for administrative remedy requests and for ensuring the accuracy of computer database entries (e.g., abstracts, subject codes, status codes, and dates) related to administrative remedy requests. I also serve as the primary point of contact for the Warden and the North Central Regional Office in regards to administrative remedy appeals.

3. As part of my official duties, I have access to records maintained in the ordinary course of business by the Bureau. These records include administrative remedy requests of federal inmates, information maintained in the Bureau's SENTRY[1] database, and other official inmate files and records. I hereby certify that the Bureau documents attached to this declaration are true and correct copies of records contained

[1] SENTRY is the Bureau's national database which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, participation in programs, administrative remedies, and discipline history.

in Bureau databases and Bureau files, and are maintained by the Bureau in the normal course of business.

4. I am familiar with all four levels of the inmate administrative grievance procedure created by the Bureau's Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10 - 542.19.

5. I am familiar with the plaintiff in this litigation, inmate Ahmed Khalfan Ghailani (Plaintiff), Federal Register Number 02476-748. Plaintiff has been housed at the ADX since June 7, 2011. *See* Attachment 1, SENTRY Public Information Inmate Data for Ahmed Khalfan Ghailani, Reg. No. 02476-748, at 1. A copy of Plaintiff's Inmate History Quarters, which summarizes his housing assignments while in Bureau custody, is attached to this declaration at Attachment 2. I also have access to Plaintiff's administrative remedy records, which are maintained by the Bureau.

## II. Plaintiff's housing history at the ADX and his current opportunities for congregate prayer

6. When Plaintiff arrived at the ADX on June 7, 2011, he was subject to limitations on his communications known as Special Administrative Measures (SAMs). Like all inmates with SAMs who are designated to the ADX, Plaintiff was placed in the ADX Special Security Unit, also known as "H Unit." *See* Attachment 2 at 1.

7. On June 10, 2015, Plaintiff's SAMs expired and were not renewed.

8. On June 10, 2015, Plaintiff was moved from the Special Security Unit to "E Unit," an ADX general-population unit. *Id*. Inmates without SAMs are not housed with SAMs inmates in order to ensure that SAMs inmates cannot use those inmates to

disseminate unauthorized communications to others, both within the prison and to the public.

9. Plaintiff remained in a general-population unit until August 19, 2016, when he was selected for the second step of the ADX Step-Down Program for general-population inmates. *Id*.; *see also* Attachment 3, FLM 5321.07(1)B, *General Population and Step-Down Unit Operations* (September 1, 2015), at 4-5 (describing Intermediate Unit of ADX step-down program). Inmates in the second step of the ADX Step-Down Program are housed in the Intermediate Unit, also known as "J/A Unit."

10. Plaintiff continued to progress through the Step-Down Program for general-population inmates. On June 6, 2017, he was transferred to the Transitional Unit of the ADX Step-Down Program for general-population inmates. *See* Attachment 2 at 1. The Transitional Unit of the Step-Down Program, also known as "B/B Unit Phase I," is physically located at the United States Penitentiary – High Security in Florence, Colorado ("USP Florence"). *See* Attachment 3 at 5 (describing "Transitional Unit (B/B Unit Phase I").

11. If Plaintiff successfully completes B/B Unit Phase I, he will be transferred to the final phase of the ADX Step-Down Program located in the Pre-Transfer Unit at USP Florence. This final phase of the Step-Down Program is also known as "B/B Unit Phase 2." *See id.* at 5-6 (describing "Pre-Transfer Unit (B/B Unit Phase II"). Upon successful completion of that phase of the Step-Down Program, Plaintiff will be considered for transfer out of the ADX Step-Down Program for designation to another

prison. *See id.* at 10 (setting forth list of "factors to be eligible for consideration for transfer out of the program to the general population of a high security institution").

12. As a participant in the ADX Step-Down Program in the Transitional Unit (B/B Unit Phase 1), Plaintiff is allowed to be outside his cell a minimum of 30.5 hours per week. *See id.* at 5. During the time when Plaintiff is outside his cell, he has unrestrained physical contact with other inmates. Plaintiff and his fellow inmates participate in indoor-activity time and outside-recreation time. *See id.*

13. The activities that are allowed during indoor-activity time include group prayer. FCC Florence correctional professionals have evaluated the unique situation of those inmates who have successfully programmed to the point where they have reached the final phases of the ADX Step-Down Program. The officials have determined that this group of inmates can be allowed to demonstrate that they can safely engage in group prayer without jeopardizing institutional security.

14. During the times designated for indoor activities, inmates in B/B Unit Phase 1 can pray together in a specially designated room located on the housing range. Prison officials have authorized inmates to use that room "for their religious activities in addition to its current uses." *See* Attachment 4, August, 22, 2017, Memorandum re: Religious Activities Procedures Bravo-Bravo, at ¶ A. The inmates must abide by all security rules in order to retain the privilege of engaging in congregate prayer. *See id.* at ¶¶ B.-E.

15. Inmates can enter the designated room to perform their prayers at any time during their assigned indoor-activity time when the room is unoccupied. Given the

relatively small number of inmates currently assigned to B/B Unit Phase 1, the inmates typically have access to the room during their entire indoor-recreation period. In the event the room becomes consistently busy with inmates of multiple faith groups seeking time to pray together, a schedule will be developed to ensure equal access to the room.

**III. The Bureau's Administrative Remedy Program**

16. The Bureau has a four-tiered Administrative Remedy Program for inmate grievances, which is codified at 28 C.F.R. § 542.10 to § 542.19. The Administrative Remedy Program allows an inmate to seek formal review of an issue relating to any aspect of his confinement.

17. The first step is informal resolution with prison staff. 28 C.F.R. § 542.13(a). A Request for Informal Resolution Form (also known as a BP-8) is not assigned a Remedy ID number and is not tracked in SENTRY. The second step is the filing of a formal Request for Administrative Remedy (also known as a BP-9) at the institution in which the inmate is incarcerated. *Id*. An administrative remedy at this level, and subsequent levels, is assigned a Remedy ID number and tracked in SENTRY. The third step occurs if the inmate feels the response to his BP-9 is not satisfactory. Within 20 calendar days of the date the Warden signs the response, the inmate may then appeal the complaint to the Regional Director, by filing a Regional Office Administrative Remedy Appeal (also known as a BP-10). *See* 28 C.F.R. § 542.15(a). The fourth step occurs if an inmate is dissatisfied with the Regional Director's response. If that is the case, an inmate may appeal to the General Counsel

in Washington D.C., by filing a Central Office Administrative Remedy Appeal (also known as a BP-11). *Id.* An inmate may not raise in an appeal an issue he did not raise in a lower-level filing. *See* 28 C.F.R. § 542.15(b)(2).

18. An inmate has not exhausted his administrative remedies until he has properly and timely sought review at all three formal levels, that is, steps 2-4 as described above. *See* 28 C.F.R. § 542.15(b)(2).

19. Since July 1990, the Bureau has maintained information related to administrative complaints filed by inmates under the Bureau Administrative Remedy Program in SENTRY. One of the many functions of the SENTRY database is to track administrative remedy complaints and appeals. It allows computerized searching of complaints and appeals filed by a specific inmate.

20. Each formal complaint (*i.e.*, BP-9, BP-10, and BP-11) is logged into SENTRY at the receiving location. If the complaint is an initial filing, it receives a unique Remedy ID Number upon initial entry, which follows the complaint throughout the appeal process. Each Remedy ID Number also contains an extender that identifies the level of review. The extension F-1 indicates the complaint was filed at the institution level (BP-9). The extension R-1 indicates the complaint or appeal was filed at the regional level (BP-10). The extension A-1 indicates the appeal was filed at the national level (BP-11). The number at the end of the extension may change if the remedy or appeal is initially rejected and is then re-filed due to a technical problem, such as improper form, failing to include documentation, or improper filing at that level.

21. An inmate has not exhausted his administrative remedies until he has properly sought review at all three formal levels. *Id.*

## IV. Plaintiff has filed no remedy about group prayer or religious exercise that addresses the conditions to which he is subject as a general-population inmate in the Transitional Unit of the ADX Step-Down Program.

22. I have reviewed the SENTRY information identifying the number and types of administrative remedies and appeals filed by Plaintiff from his arrival at the ADX on June 7, 2011, to the present day. A true and correct copy of the SENTRY Administrative Remedy Generalized Retrieval for Plaintiff is attached to this declaration as Attachment 5.

23. Since June 7, 2011, until today, Plaintiff has filed nine administrative remedies. Of those nine administrative remedies, he has exhausted only one series of administrative remedies/appeals via Administrative Remedy No. 669441. *See* Attachment 6, Administrative Remedy No. 669441.

24. On December 19, 2011, Plaintiff filed Request for Administrative Remedy No. 669441-F1 at the institutional level, in which he sought the "removal of all ongoing restrictions imposed on me in accordance with Special Administrative Measures (S.A.M.)" *See id.* at 6-7. Specifically, Plaintiff wrote:

> For the following reasons, I respectfully request for removal of all ongoing restrictions imposed on me in accordance with Special Administrative Measures (S.A.M.) [:]
>
> (1) For over seven years I have been incarcerated under federal custody. For all this time I have commited (sic) absolutely nothing that suggested that there continues to be substantial risk.

(2) The ongoing S.A.M's restrictions imposed on me without meaningful proceeding or due process of law where I might challenged (sic) the imposition of such punishment or secure my right to be free from this abuse.

(3) The ongoing S.A.M's restrictions imposed on me based solely on hypothetical speculations and analytical assessments that are unsupported by credible proof.

(4) The ongoing S.A.M.'s restrictions are additional punishment on me above that imposed by the sentencing judicial court.

(5) Each and every S.A.M's restriction is relevant to qusstions (sic) about negative psychological impact they have on inmate if imposed for prolonged duration of time. And each and every restriction is violating my fundamental constitution (sic) rights. Those rights including 1st, 5th, 6th, 8th, and 14th amendments.

Dated: Dec. 15, 2011 Respectfully submitted,
/s/ Ahmed K. Ghailani
Ahmed K. Ghailani

25. In this remedy, Plaintiff complained about the "S.A.M's restrictions" generally, although he did not specifically mention the SAMs restriction on group prayer as the basis for his complaint. *See id.* at 6-7. Furthermore, Plaintiff never mentioned any prison restriction other than those contained in the SAMs at any step of the remedy process.

26. At the Regional level of the grievance process, Plaintiff wrote in Administrative Remedy No. 669441-R1[2]:

> I am not satisfied with the respond (sic) to my request for Administrative Remedy because it does not address any basis of my request. Accordingly, I hereby reinstate and

[2] The scanned copy of some pages is difficult to read. I have reviewed the documents maintained in the Bureau's file and record Plaintiff's written statements verbatim.

> incorporate those complains (sic) into this appeal and simply requesting removal of all ongoing S.A.M. restriction (sic) imposed on me.

*See id.* at 3.

27. At the Central Office level of the grievance process, Plaintiff wrote in Administrative Remedy No. 669441-A1:

> I am dissatisfied with the reason of denial to my Regional Administration (sic) Remedy Appeal.

*See id.* at 1.

28. The exhaustion process for Administrative Remedy No. 669441 was completed at the Central Office level on November 9, 2012. *See id.* at 2.

29. Of the remaining six administrative remedy filings and responses, review shows that these filings were neither exhausted, nor do they relate to any complaint concerning access to group prayer.

30. Review of the administrative remedy filing and response for Administrative Remedy No. 895392-F1, shows this filing relates to a complaint that Plaintiff's mail to and from courts and United States Attorneys has been delayed for no reason. *See* Attachment 7, Administrative Remedy No. 895392-F1. Plaintiff did not complete the exhaustion process.

31. Review of the administrative remedy filings and responses for Administrative Remedy No. 784116-R1 and Administrative Remedy No. 784116-F1, shows these filings relate to a complaint concerning the disciplinary hearing process which was conducted in relation to an incident report Plaintiff received in January 2014.

*See* Attachment 8, Administrative Remedy Nos. 784116-R1 and 784116-F1. Plaintiff did not complete the exhaustion process.

32. Review of the administrative remedy filings and responses for Administrative Remedy Nos. 768925-F1 and 758449-F1 shows these filings relate to complaints concerning participation in Phase 2 of the incentive program for SAMs inmates implemented in the Special Security Unit. *See* Attachment 9, Administrative Remedy No. 768925-F1; Attachment 10, Administrative Remedy No. 758449-F1. Plaintiff did not complete the exhaustion process for either of these remedies.

33. Review of the administrative remedy filing for Administrative Remedy No. 666328-F1 shows this filing, in which Plaintiff sought to challenge the renewal of his SAMs in November 2011, was rejected as untimely. *See* Attachment 11, Administrative Remedy No. 666328-F1. Plaintiff did not resubmit this filing and, thus, did not complete the exhaustion process.

## V. Conclusion

34. Plaintiff has never filed an administrative remedy that raised a complaint about lack of access to group prayer in an ADX general-population unit, including any purported lack of access to group prayer in B/B Unit Phase 1, where he is currently housed. In the absence of any such remedy, the BOP had no opportunity to investigate or to attempt to resolve that claim.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on September 19, 2017, in Florence, Colorado.

/s/ *Todd Chapman*
Todd Chapman
Executive Assistant
FCC Florence

| | |
|---|---|
| Attachment 1: | SENTRY Public Information Inmate Data |
| Attachment 2: | SENTRY Inmate History – Quarters |
| Attachment 3: | FLM 5321.07(1)B, *General Population and Step-Down Unit Operations* (September 1, 2015) |
| Attachment 4: | Memorandum re: Religious Activities Procedures for Bravo-Bravo (August, 22, 2017) |
| Attachment 5: | SENTRY Administrative Remedy Generalized Retrieval |
| Attachment 6: | Administrative Remedy No. 669441 |
| Attachment 7: | Administrative Remedy No. 895392-F1 |
| Attachment 8: | Administrative Remedy Nos. 784116-R1 and 784116-F1 |
| Attachment 9: | Administrative Remedy Nos. 768925-F1 |
| Attachment 10: | Administrative Remedy No. 758449-F1 |
| Attachment 11: | Administrative Remedy No. 666328-F1 |

# Attachment 1
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.***,
Civil Action No. 14-cv-00041-CMA

AS OF 09-19-2017

REGNO..: 02476-748 NAME: GHAILANI, AHMED KHALFAN

RESP OF: FLP
PHONE..: 719-784-9454 FAX: 719-784-5157
RACE/SEX...: BLACK / MALE
AGE: 43
PROJ REL MT: LIFE PAR ELIG DT: N/A
PROJ REL DT: LIFE PAR HEAR DT:

REGNO..: 02476-748 NAME: GHAILANI, AHMED KHALFAN

RESP OF: FLP
PHONE..: 719-784-9454 FAX: 719-784-5157
THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE: LIFE

----------------------CURRENT JUDGMENT/WARRANT NO: 010 ------------------------

COURT OF JURISDICTION...........: NEW YORK, SOUTHERN DISTRICT
DOCKET NUMBER...................: 1:S10 98 CR 1023-09(
JUDGE...........................: KAPLAN
DATE SENTENCED/PROBATION IMPOSED: 01-25-2011
DATE COMMITTED..................: 03-11-2011
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

| | FELONY ASSESS | MISDMNR ASSESS | FINES | COSTS |
|---|---|---|---|---|
| NON-COMMITTED.: | $100.00 | $00.00 | $00.00 | $00.00 |

RESTITUTION...: PROPERTY: NO SERVICES: NO AMOUNT: $33,816,561.00

-------------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....: 890
OFF/CHG: 18:844(N); CONSPIRACY TO BOMB BUILDINGS AND OTHER PROPERTY
OF US.

SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.: LIFE
DATE OF OFFENSE................: 03-12-2001

REGNO..: 02476-748 NAME: GHAILANI, AHMED KHALFAN

RESP OF: FLP
PHONE..: 719-784-9454 FAX: 719-784-5157

-------------------------CURRENT COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 03-11-2011 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 03-17-2011 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 01-25-2011
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
EARLIEST DATE OF OFFENSE........: 03-12-2001

JAIL CREDIT.....................: FROM DATE THRU DATE
06-04-2009 01-24-2011

TOTAL PRIOR CREDIT TIME.........: 600
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: N/A
EXPIRATION FULL TERM DATE.......: LIFE
TIME SERVED.....................: 8 YEARS 3 MONTHS 18 DAYS

PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE

S0055 NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

# Attachment 2
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.***,
Civil Action No. 14-cv-00041-CMA

REG NO..: 02476-748 NAME....: GHAILANI, AHMED KHALFAN
CATEGORY: QTR FUNCTION: PRT FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|---|---|---|---|---|
| FLP | B07-207L | HOUSE B/RANGE 07/BED 207L | 06-06-2017 1249 | CURRENT |
| FLP | R01-001L | HOUSE R/RANGE 01/BED 001L | 06-06-2017 1109 | 06-06-2017 1249 |
| FLM | J02-216L | HOUSE J/RANGE 02/BED 216L | 08-19-2016 1259 | 06-06-2017 1000 |
| FLM | E05-102L | HOUSE E/RANGE 05/BED 102L | 06-23-2016 0735 | 08-19-2016 1259 |
| FLM | E05-101L | HOUSE E/RANGE 05/BED 101L | 03-25-2016 1241 | 06-23-2016 0735 |
| FLM | E05-108L | HOUSE E/RANGE 05/BED 108L | 12-02-2015 0729 | 03-25-2016 1241 |
| FLM | E05-107L | HOUSE E/RANGE 05/BED 107L | 08-28-2015 1000 | 12-02-2015 0729 |
| FLM | E05-106L | HOUSE E/RANGE 05/BED 106L | 06-10-2015 1434 | 08-28-2015 1000 |
| FLM | H04-406L | HOUSE H/RANGE 04/BED 406L | 05-07-2015 1848 | 06-10-2015 1434 |
| FLM | H01-104L | HOUSE H/RANGE 01/BED 104L | 09-17-2014 1046 | 05-07-2015 1848 |
| FLM | K01-106L | HOUSE K/RANGE 01/BED 106L | 07-18-2014 2048 | 09-17-2014 1046 |
| FLM | H01-104L | HOUSE H/RANGE 01/BED 104L | 04-18-2014 1817 | 07-18-2014 2048 |
| FLM | H04-203L | HOUSE H/RANGE 04/BED 203L | 03-26-2014 1053 | 04-18-2014 1817 |
| FLM | L01-002L | HOUSE L/RANGE 01/BED 002L | 03-10-2014 1415 | 03-26-2014 1053 |
| FLM | H01-104L | HOUSE H/RANGE 01/BED 104L | 01-18-2013 1404 | 03-10-2014 1415 |
| FLM | H04-403L | HOUSE H/RANGE 04/BED 403L | 01-18-2013 1008 | 01-18-2013 1404 |
| FLM | H04-203L | HOUSE H/RANGE 04/BED 203L | 10-22-2012 1439 | 01-18-2013 1008 |
| FLM | H03-108L | HOUSE H/RANGE 03/BED 108L | 10-01-2012 1420 | 10-22-2012 1439 |
| FLM | L01-002L | HOUSE L/RANGE 01/BED 002L | 09-20-2012 0938 | 10-01-2012 1420 |
| FLM | H03-106L | HOUSE H/RANGE 03/BED 106L | 09-17-2012 1010 | 09-20-2012 0938 |
| FLM | L01-002L | HOUSE L/RANGE 01/BED 002L | 09-10-2012 1515 | 09-17-2012 1010 |
| FLM | H03-104L | HOUSE H/RANGE 03/BED 104L | 06-14-2012 0917 | 09-10-2012 1515 |
| FLM | H03-103L | HOUSE H/RANGE 03/BED 103L | 03-08-2012 0916 | 06-14-2012 0917 |
| FLM | H03-104L | HOUSE H/RANGE 03/BED 104L | 12-16-2011 0911 | 03-08-2012 0916 |
| FLM | H03-102L | HOUSE H/RANGE 03/BED 102L | 09-15-2011 1049 | 12-16-2011 0911 |
| FLM | H03-103L | HOUSE H/RANGE 03/BED 103L | 09-08-2011 1303 | 09-15-2011 1049 |
| FLM | Z13-010L | HOUSE Z/RANGE 13/BED 010L | 06-07-2011 1312 | 09-08-2011 1303 |
| FLP | Z04-235L | HOUSE Z/RANGE 04/BED 235L | 06-04-2011 1413 | 06-07-2011 1240 |
| FLP | Z04-227L | HOUSE Z/RANGE 04/BED 227L | 05-21-2011 1428 | 06-04-2011 1413 |
| FLP | Z04-236L | HOUSE Z/RANGE 04/BED 236L | 05-11-2011 1252 | 05-21-2011 1428 |
| FLP | Z04-234L | HOUSE Z/RANGE 04/BED 234L | 04-21-2011 1117 | 05-11-2011 1252 |
| FLP | Z04-234LDS | HOUSE Z/RANGE 04/BED 234L DS | 04-01-2011 1405 | 04-21-2011 1117 |
| FLP | Z04-235LDS | HOUSE Z/RANGE 04/BED 235L DS | 03-11-2011 2000 | 04-01-2011 1405 |
| FLP | Z01-100L | HOUSE Z/RANGE 01/BED 100L | 03-11-2011 1639 | 03-11-2011 2000 |
| FLP | R01-001L | HOUSE R/RANGE 01/BED 001L | 03-11-2011 1218 | 03-11-2011 1639 |
| OKL | Z01-723LAD | HOUSE Z/RANGE 01/BED 723L AD | 03-09-2011 1922 | 03-11-2011 0850 |
| OKL | R01-001L | HOUSE R/RANGE 01/BED 001L | 03-09-2011 1745 | 03-09-2011 1922 |
| NYM | Z07-003LAD | HOUSE Z/RANGE 07/BED 003L AD | 02-25-2011 0704 | 03-09-2011 0825 |
| NYM | Z07-004LAD | HOUSE Z/RANGE 07/BED 004L AD | 01-25-2011 1200 | 02-25-2011 0704 |
| NYM | Z07-004LAD | HOUSE Z/RANGE 07/BED 004L AD | 01-21-2011 0924 | 01-25-2011 1158 |
| NYM | Z07-001LAD | HOUSE Z/RANGE 07/BED 001L AD | 12-23-2010 1334 | 01-21-2011 0924 |

G0002 MORE PAGES TO FOLLOW . . .

REG NO..: 02476-748 NAME....: GHAILANI, AHMED KHALFAN
CATEGORY: QTR FUNCTION: PRT FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|---|---|---|---|---|
| NYM | Z07-002LAD | HOUSE Z/RANGE 07/BED 002L AD | 11-22-2010 1352 | 12-23-2010 1334 |
| NYM | Z07-004LAD | HOUSE Z/RANGE 07/BED 004L AD | 11-02-2010 0904 | 11-22-2010 1352 |
| NYM | Z07-002LAD | HOUSE Z/RANGE 07/BED 002L AD | 10-06-2010 1019 | 11-02-2010 0904 |
| NYM | Z07-003LAD | HOUSE Z/RANGE 07/BED 003L AD | 09-10-2010 1304 | 10-06-2010 1019 |
| NYM | Z07-002LAD | HOUSE Z/RANGE 07/BED 002L AD | 08-10-2010 0954 | 09-10-2010 1304 |
| NYM | Z07-003LAD | HOUSE Z/RANGE 07/BED 003L AD | 07-13-2010 1606 | 08-10-2010 0954 |
| NYM | Z07-005LAD | HOUSE Z/RANGE 07/BED 005L AD | 06-22-2010 0823 | 07-13-2010 1606 |
| NYM | Z07-006LAD | HOUSE Z/RANGE 07/BED 006L AD | 06-03-2010 1642 | 06-22-2010 0823 |
| NYM | Z07-004LAD | HOUSE Z/RANGE 07/BED 004L AD | 05-11-2010 1551 | 06-03-2010 1642 |
| NYM | Z07-001LAD | HOUSE Z/RANGE 07/BED 001L AD | 04-19-2010 1416 | 05-11-2010 1551 |
| NYM | Z07-002LAD | HOUSE Z/RANGE 07/BED 002L AD | 03-22-2010 1516 | 04-19-2010 1416 |
| NYM | Z07-001LAD | HOUSE Z/RANGE 07/BED 001L AD | 03-01-2010 1406 | 03-22-2010 1516 |
| NYM | Z07-005LAD | HOUSE Z/RANGE 07/BED 005L AD | 02-07-2010 1312 | 03-01-2010 1406 |
| NYM | Z07-006LAD | HOUSE Z/RANGE 07/BED 006L AD | 01-16-2010 0855 | 02-07-2010 1312 |
| NYM | Z07-003LAD | HOUSE Z/RANGE 07/BED 003L AD | 12-23-2009 1555 | 01-16-2010 0855 |
| NYM | Z07-001LAD | HOUSE Z/RANGE 07/BED 001L AD | 11-29-2009 1231 | 12-23-2009 1555 |
| NYM | Z07-002LAD | HOUSE Z/RANGE 07/BED 002L AD | 11-01-2009 1345 | 11-29-2009 1231 |
| NYM | Z07-001LAD | HOUSE Z/RANGE 07/BED 001L AD | 10-14-2009 0922 | 11-01-2009 1345 |
| NYM | Z07-002LAD | HOUSE Z/RANGE 07/BED 002L AD | 09-27-2009 0740 | 10-14-2009 0922 |
| NYM | Z07-006LAD | HOUSE Z/RANGE 07/BED 006L AD | 09-14-2009 1017 | 09-27-2009 0740 |
| NYM | Z07-002LAD | HOUSE Z/RANGE 07/BED 002L AD | 09-02-2009 1256 | 09-14-2009 1017 |
| NYM | Z07-003LAD | HOUSE Z/RANGE 07/BED 003L AD | 08-04-2009 0902 | 09-02-2009 1256 |
| NYM | Z07-001LAD | HOUSE Z/RANGE 07/BED 001L AD | 07-28-2009 0914 | 08-04-2009 0902 |
| NYM | Z07-003LAD | HOUSE Z/RANGE 07/BED 003L AD | 07-07-2009 0824 | 07-28-2009 0914 |
| NYM | Z07-002LAD | HOUSE Z/RANGE 07/BED 002L AD | 06-16-2009 1337 | 07-07-2009 0824 |
| NYM | Z07-001LAD | HOUSE Z/RANGE 07/BED 001L AD | 06-09-2009 0514 | 06-16-2009 1337 |

G0000 TRANSACTION SUCCESSFULLY COMPLETED

# Attachment 3
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.***,
Civil Action No. 14-cv-00041-CMA

**U. S. Department of Justice**
Federal Bureau of Prisons
United States Penitentiary
Administrative Maximum Facility
Florence, Colorado 81226

INSTITUTION SUPPLEMENT

OPI: Unit Management
NUMBER: FLM 5321.07(1)B
DATE: September 1, 2015

# General Population and Step-Down Unit Operations

***/s/***
*Approved:* J. Oliver, Warden
Administrative Maximum Security Institution

1. **PURPOSE AND SCOPE:** To establish operational guidelines for the units which are designated as the general population and step-down units.

2. **DIRECTIVES AFFECTED:**

   A. **Directives Rescinded:** Institution Supplement FLM 5321.07(1)A, General Population and Step-Down Unit Operations, dated July 20, 2015.

   B. **STANDARDS REFERENCED:** None.

3. **SUMMARY OF CHANGES:** To add Pre-Intermediate Unit procedures and Privilege Incentive Program (PIP).

4. **GENERAL PROCEDURES:**

   A. **GENERAL POPULATION UNITS (D, E, F, and G)**

      1. Inmates housed in these units require hand restraints, behind the back, and two-officer escorts when being removed from their cells. Any time an inmate is handcuffed in the front, a martin chain must be used in addition to the handcuffs.

2. These units have indoor and outdoor, single occupancy recreation areas. All out-of-cell recreation will occur within the unit, in one of the single occupancy recreation areas. Inmates will ordinarily be afforded a minimum of ten hours out-of-cell exercise per week. An inmate will be returned to his cell upon his request. Anyone returning to his cell for any reason voluntarily terminates the remainder of his recreation period for that day. Recreation periods missed due to visits (legal or social), medical call-outs, and religious services will not be rescheduled. The Unit Recreation Log will be completed by the unit officers to document acceptance or refusal of recreation, type of recreation, and amount of time the inmate receives recreation. The Unit Recreation Log will be provided to, and maintained by the Captain.

3. Inmates will consume their meals within their cells.

4. Shower stalls are located within each cell. Inmates are authorized to shower between the hours of 6:00 a.m. and 10:00 p.m.

5. Unit orderlies for ranges and recreation areas will be assigned by the Unit Manager. Barbering facilities are available in each unit. Social and attorney calls will be conducted as established in the Institution Supplement on Telephone Regulations. Each unit contains an electronic law library, which inmates may sign-up to utilize. The majority of programming, including Drug Abuse, Education, Recreation, Religious Services, Re-Entry, and unit/facility information, are available via closed circuit television/radio, which is located in each cell.

6. **OUTSIDE, OUT-OF-CELL RECREATION SUSPENSION/RESTRICTION**

   a. When an inmate violates institution rules and regulations during his out-of-cell recreation, his outside, out-of-cell recreation on a large recreation yard may be temporarily suspended. Examples of violations include, but are not limited to, sexual acts or gestures, suicidal attempts or gestures, assaulting or resisting staff during escort to or from the recreation area, destruction of the recreation area, smearing or throwing human waste, etc.

   b. Staff will initiate disciplinary action and notify the Operations Lieutenant of any violation(s) immediately.

c. The Operations Lieutenant will initiate a memorandum requesting the inmate's outside, out-of-cell recreation on the large recreation yard be immediately suspended. The memorandum will also request that the inmate's outside, out-of-cell recreation be immediately restricted to the outside, single occupancy recreation areas around the housing unit's control center. The memo will be forwarded through the Captain and ADX Associate Warden with oversight of Correctional Services, to the Warden for approval, with a copy to the Unit Manager.

d. If approved, the inmate's initial suspension/restriction will be for three months. The Warden may impose an increased suspension/restriction for repeated, frequent violations.

e. Upon initial entry into the Intermediate step of the Program, the Warden may limit or restrict group recreation of the inmate for two weeks. Inmates transitioning into that step will ordinarily be allowed an out-of-cell recreation for one and a half hours a day. Unit Staff will provide a written notice of the transition procedures concerning each inmate.

**B. PRE-INTERMEDIATE UNIT (K/A-Unit):**

**1.** Ordinarily, the placement of an inmate into this unit is only appropriate if the Step-Down Screening Committee determines that the inmate has demonstrated he can safely function in a less-restrictive unit without posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including himself; and/or posing a risk to public safety, but has not demonstrated he can function in the Intermediate Unit of the Program without posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including himself; and/or posing a risk to public safety.

**2.** The escort requirements for inmates housed in this unit are the same as those in the General Population Units. Inmates will be assigned to a group. Each group will have 2 inmates.

**3.** This unit has an outdoor recreation area. Inmates will ordinarily be afforded a minimum of ten hours out-of-cell exercise per week. Out-of-cell recreation will include the use of the outdoor recreation area and unit range.

**4.** Inmates will consume their meals within their cells.

**5.** Showers are located on the ranges. Inmates will be escorted to showers. The escort requirements are the same as those in the General Population Units.

**6.** All other programming activities, orderly assignments, telephone usage, basic law library usage, and barbering facilities are the same as those in the General Population Units.

**7.** The Unit Recreation Log will be completed by the unit officers to document acceptance or refusal of recreation, type of recreation, and amount of time the inmate receives recreation. The Unit Recreation Log will be provided to, and maintained by the Captain.

**8.** The unit team will review each inmate placed in this unit at least every 90 days, to determined eligibility for consideration for placement in the Program. The guidance concerning the Program, eligibility factors and review procedure set forth in section 5, below, are applicable to inmates housed in this unit and these reviews.

**C. STEP-DOWN PROGRAM UNITS**

1. **Intermediate Unit (J/A-Unit):**

a. Ordinarily, this is the second step of the Step-Down Program (Program) prior to transfer to an appropriate facility.

b. The escort requirements for inmates housed in this unit are the same as those in the General Population Units. Inmates will be assigned to 1 of 4 groups. Each group will have a maximum of 8 inmates.

b. This unit has an outdoor recreation area. Inmates will ordinarily be afforded a minimum of 20½ hours out-of-cell exercise per week. Out-of-cell recreation will include the use of the outdoor recreation area and unit range. Each group of inmates will be allowed on the range for 1½ hours each day. All other aspects of recreation are the same as those in the General Population Units.

c. Inmates will consume their meals within their cells.

d. Showers are located on the ranges. Inmates may shower at any time they are on the range.

e. All other programming activities, orderly assignments, telephone usage, basic law library usage, and barbering facilities are the same as those in the General Population Units.

f. The Unit Recreation Log will be completed by the unit officers to document acceptance or refusal of recreation, type of recreation, and amount of time the inmate receives recreation. The Unit Recreation Log will be provided to, and maintained by the Captain

2. **Transitional Unit (B/B Unit Phase I):**

a. This unit is physically located in B/B Unit at the United States Penitentiary (USP), High Security, Florence, Colorado.

b. Ordinarily, this is the third step of the Program prior to transfer to an appropriate facility.

c. Inmates will be assigned to 1 of 2 groups. Each group will have a maximum of 12 inmates.

d. Inmates will recreate with their assigned group. The inmates' out-of-cell recreation will include recreation in the unit and in the outdoor group recreation area. Recreation periods missed due to visits (legal or social), medical call-outs, and religious services will not be rescheduled. Ordinarily, inmates will receive 30½ hours of recreation per week.

d. Inmates will consume their meals on the range with their assigned group.

e. Inmates will be unrestrained when out of their cells. The use of restraints is not required during the escort of inmates to various programming areas.

f. Showers are located on the ranges. Inmates may shower at any time they are on the range.

g. All other programming activities, orderly assignments, telephone usage, electronic law library usage, and barbering facilities will be the same as those in the General Population Units.

h. Inmates will be escorted to commissary once a week.

3. **Pre-Transfer Unit (B/B Unit Phase II):**

a. This unit is physically located in B/B Unit at the United States Penitentiary (USP), High Security, Florence, Colorado.

b. Ordinarily, this is the final step of the Step-Down Program prior to transfer to an appropriate facility.

c. Inmates will be assigned to 1 of 2 groups. Each group will have a maximum of 28 inmates.

d. Upon arrival in this step of the Program, an inmate will initially be single celled for three months. The inmate will then be reviewed by the unit team for placement in a double occupancy cell. If approved by the Associate Warden, the inmate will be placed in a double occupancy cell with another inmate. If not approved, the inmate will be provided written notice of the decision, informing of the reasons why and that the decision can be appealed through the Federal Bureau of Prisons' Administrative Remedy Program. An inmate denied placement in a double occupancy cell will be reviewed at least monthly.

e. Inmates will be unrestrained when out of their cells. The use of restraints is not required during the escort of inmates to various programming areas.

f. Inmates will consume their meals on the range with their assigned group.

g. Showers are located on the ranges. Inmates may shower at any time they are on the range.

h. Inmates will recreate with their assigned group. The inmates' out-of-cell recreation will include recreation in the unit and in the outdoor group recreation area. Recreation periods missed due to visits (legal or social), medical call-outs, and religious services will not be rescheduled. Ordinarily, inmates will receive 35½ hours of recreation per week.

i. Ordinarily, inmates will be employed as orderlies, tutors, maintenance workers, barbers, laundry workers, and recreation/wellness workers in the unit. Assignments will made by the Unit Manager.

j. Barbering facilities will be made available. Social and attorney calls will be conducted as established in the Institution Supplement on Telephone Regulations. Each unit contains an electronic law library, which inmates may sign-up to utilize. The majority of programming, including Drug Abuse, Education, Recreation, and Religious Services,

are available via closed circuit television, which is located in the unit.

k. Inmates will be escorted to commissary once a week.

D. **CANCELLATION OF OUT-OF-CELL RECREATION** - On those rare occasions when institution emergencies or adverse weather interferes with the recreation schedule, the following procedures will apply:

1. The Operations Lieutenant has the authority to cancel recreation due to an institution emergency or adverse weather.

2. Unit officers will ensure any lost recreation time is clearly noted in the unit log, and this information is relayed to the Unit Manager for monitoring.

3. The Captain and Unit Manager must confer with the appropriate Associate Warden concerning canceled recreation.

5. **STEP-DOWN PROGRAM (PROGRAM)**

A. **PURPOSE & SCOPE**

1. The procedures for the Program do not affect the Federal Bureau of Prisons' authority – pursuant to 18 U.S.C. § 3621(b) and as delegated by the Attorney General under 28 C.F.R. § 0.96(c) – to designate an inmate to a different facility, or transfer an inmate between different facilities.

2. The Program utilizes a stratified system of less-restrictive housing to provide inmates with incentives to adhere to the standards of conduct associated with a maximum security custody program. Ordinarily, as inmates at the ADX demonstrate periods of clear conduct and positive institution adjustment, it is possible for the inmate to progress from the General Population Units, through the Intermediate, Transitional, and Pre-Transfer Units, with increasing degrees of personal freedom and privileges at each stage, and be transferred out of the Program to an open population institution. An inmate's placement in, advancement through, and transfer out of, the Program is a classification decision as to whether the inmate can safely function in a less-restrictive unit without posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including the inmate himself; and/or posing a risk to public safety.

3. Every inmate has the opportunity to demonstrate he may be housed in a less-restrictive unit.

4. Ordinarily, the Program consists of four steps, differentiated by the conditions of confinement and the minimum time frames for completion. Ordinarily, the minimum time period to complete the program is 36 months. Ordinarily, the minimum stay in a General Population Unit is 12 months, the Intermediate Unit (J/A-Unit) is 6 months, the Transitional Unit (B/B Phase I) is 6 months, and the Pre-Transfer Unit (B/B Phase II) is 12 months. There is no minimum or maximum time period for completion of the Program.

5. Staff must assess whether the inmate has actually demonstrated he can function in a less-restrictive environment through his meeting of the eligibility requirements.

6. In assessing an inmate's compliant behavior for placement into the Intermediate Unit, the Step-Down Screening Committee may determine that while he has demonstrated that he can function in a less restrictive environment without posing a risk to institution security and good order; posing a risk to the safety and security of staff, inmates or others, including himself; and/or posing a risk to public safety, he has not demonstrated that he can function in the Intermediate Unit and may decide to place the inmate in the Pre-Intermediate Unit. An inmate's placement in, and advancement through the Pre-Intermediate Unit into the Intermediate Unit is a classification decision as to whether the inmate can safely function in a less-restrictive unit without posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including the inmate himself; and/or posing a risk to public safety. Ordinarily, the minimum stay in the Pre-Intermediate Unit is 90 days. An inmate's placement into the Pre-Intermediate Unit does not alter the inmate's progression through the Intermediate, Transitional, and Pre-Transfer steps of the Program.

7. If the Step-Down Program Screening Committee determines additional time is needed to assess an inmate's compliant behavior to ensure that when placed in, advanced through, or transferred out of the program the inmate will not: pose a risk to institution security and good order; pose a risk to the safety and security of staff, inmates or others, including the inmate himself; and/or pose a risk to public safety with the additional privileges, the inmate's placement in, advancement through, or transfer out of the program may be deferred.

8. All steps of the program, including the Transitional Unit (B/B Phase I) and the Pre-Transfer Unit (B/B Phase II), are considered part of the ADX.

B. **REFERRAL & ELIGIBILITY FACTORS -** The unit team will review each inmate to determine eligibility for consideration for placement in, advancement through, and/or transfer out of, the Program. Ordinarily, the review will be conducted in connection with regularly scheduled Program Reviews. The inmates are provided a minimum of 48 hours prior notice of scheduled Program Reviews, are expected to attend, and can personally raise questions and concerns about his placement in, advancement through, or transfer out of the program. These meetings are held at least once every six months. Program Reviews give staff and inmates the opportunity to discuss issues in an open forum.

1. **Eligibility for Placement -** Ordinarily, an inmate must meet the following factors to be eligible for consideration for placement in the Step-Down Program, (Intermediate Unit (J/A-Unit)):

    a. A minimum of 12 months clear conduct, from the date of the incident, while housed in one of the General Population Units;

    b. Active participation in and completion of all programs recommended by the unit team;

    c. Positive behavior and respectful conduct towards staff and other inmates; and

    d. Positive overall institution adjustment to include, but not limited to, personal hygiene, cell sanitation, etc.

    The inmates who the unit team determines are eligible for consideration for placement into the Program will be referred to the Step-Down Program Screening Committee for consideration.

2. **Eligibility for Advancement -** Ordinarily, an inmate must meet the following factors to be eligible for consideration for advancement to the next step (Transitional (B/B Phase I) or Pre-Transfer (B/B Phase II) of the program:

    a. A minimum of 6 months clear conduct, from the date of the incident, while housed in the respective Intermediate (J/A-Unit) and Transitional Unit (B/B Phase I);

    b. Active participation in and completion of all programs recommended by the unit team;

    c. Positive behavior, including respectful and appropriate conduct towards staff and other inmates; and

d. Positive overall institution adjustment to include, but not limited to, personal hygiene, cell sanitation, etc.

Inmates who the unit team determines are eligible for consideration for advancement to the next step of the Program will be referred to the Step-Down Program Screening Committee for consideration.

3. **Eligibility for Referral for Transfer Out of the Program -** Ordinarily, an inmate must meet the following factors to be eligible for consideration for transfer out of the program to the general population of a high security institution:

a. A minimum of 12 months clear conduct, from the date of the incident while housed in the Pre-Transfer Unit (B/B Phase II);

b. A minimum of 3 months being housed in a double-occupancy cell with another inmate;

c. Active participation in and completion of all programs recommended by the unit team;

d. Positive behavior, including respectful and appropriate conduct towards staff and other inmates; and

e. Positive overall institution adjustment to include, but not limited to, personal hygiene, cell sanitation, etc.

Inmates who the unit team determines are eligible for transfer out of the program will be recommended for transfer to the Regional Director, North Central Region, from the Warden, ADX Florence.

C. **REVIEW PROCEDURE**

1. Placement/Advancement

a. A multi-discipline Step-Down Program Screening Committee (Committee) will review each inmate referred by the unit team to determine whether the inmate can safely function in a less-restrictive unit without posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including the inmate himself; and/or posing a risk to public safety.

b. The composition of the Committee will ordinarily consist of the Warden of the ADX, Associate Warden with daily oversight of ADX Unit Management, ADX Captain, Special Investigative Agent, Case Management Coordinator, Unit

Managers (General Population, Pre-Intermediate (K/A-Unit), Intermediate (J/A-Unit), Transitional (B/B Phase I), & Pre-Transfer (B/B Phase II)), Psychology, and Supervisory Attorney.

c. The determinations made by the Committee are made on a case-by-case basis.

d. Eligibility for consideration does not equate to appropriateness for placement into or advancement to the next step of the program.

e. The factors the Committee may consider when determining whether the inmate can safely function in a less-restrictive unit without posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including the inmate himself; and/or posing a risk to public safety, include, but are not limited to:

i. The inmate's conduct while housed at the ADX, the Transitional Unit (B/B Phase I), and/or the Pre-Transfer Unit (B/B Phase II) physically located at the USP;

ii. The inmate's participation in and completion of programs recommended by the unit team while housed at the ADX, the Transitional Unit (B/B Phase I), and/or the Pre-Transfer Unit (B/B Phase II) physically located at the USP;

iii. The inmate's behavior and conduct towards, and interaction with, staff and other inmates while at the ADX, the Transitional Unit (B/B Phase I), and/or the Pre-Transfer Unit (B/B Phase II) physically located at the USP;

iv. The inmate's overall institution adjustment, personal hygiene, and cell sanitation while at the ADX, the Transitional Unit (B/B Phase I), and/or the Pre-Transfer Unit (B/B Phase II) physically located at the USP;

v. The reason(s) the inmate was designated to the ADX,

vi. The inmate's criminal history;

vii. The inmate's involvement with criminal organizations, if any, and the potential safety and security threat(s) implicated by such involvement;

viii. The inmate's overall adjustment during his history of confinement;

ix. The institution's safety and security needs, including the safety and security of staff;

x. The safety and security needs of the inmate;

xi. The safety and security needs of other inmates;

xii. The safety and security needs of the public;

xiii. Any other relevant factor(s).

f. The review by the Committee is not a hearing. The inmate is not entitled to be present, to have counsel, or to call witnesses. As mentioned, the inmate may present issues concerning his advancement during his Program Reviews. The inmate is notified at least 48 hours before his scheduled Program Review. This is the inmate's opportunity for individual attention and he is encouraged to ask questions and discuss concerns.

g. The final decision regarding placement in, or advancement to the next step of the program, is made by the Warden of the ADX.

2. Recommendation for Transfer Out of the Program

a. The determinations to transfer inmates out of the program are made on a case-by-case or inmate-by-inmate basis.

b. Eligibility for consideration to be transferred out of the program does not equate to appropriateness for transfer out of the program.

c. The recommendation for transfer out of the Program is made by the Warden of the ADX to the Regional Director.

d. The factors the Regional Director may consider include, but are not limited to, those factors set forth in Part C 1(e), above.

e. The review by the Regional Director is not a hearing. The inmate is not entitled to be present, to have counsel, or to call witnesses. As mentioned, the inmate may present issues concerning his transfer out of the program during his Program Reviews. The inmate is notified at least 48 hours before his scheduled Program Review. This is the inmate's opportunity for individual attention and he is encouraged to ask questions and discuss concerns.

f. The final decision regarding transfer out of the program is made by the Regional Director, North Central Region.

3. Notification

a. Each inmate will receive written notification of the decision from the appropriate Associate Warden.

b. If the inmate is denied placement into, advancement to the next step of, or transfer out of the Program, the Associate Warden's written notification will include the following:

i. The reason(s) for the denial, unless it is determined the release of this information could pose a threat to individual safety or institutional security, in which case that limited information may be withheld.

ii. The inmate may appeal the decision through the Administrative Remedy Program.

c. If the notification concerns the denial of a recommendation for transfer out of the program, the notice will also include the Regional Director's direction as to when the inmate should next be recommended for transfer.

4. The denial of an inmate for placement in, advancement to the next step of, or transfer out of the program does not preclude the Committee and/or Regional Director from exercising their discretion to reach a different conclusion at a future review.

5. Provided the inmate who was denied continues to meet the eligibility factors for placement in or advancement to the next step of the program, the inmate will continue to be reviewed at least every six months.

D. **REMOVAL**

1. Inmates may be removed from any step of the program for the following reasons:

a. If the inmate is found guilty of committing prohibited acts by the UDC or DHO;

b. If the inmate can no longer safely function in a less-restrictive unit without posing a risk to institutional security and good order; posing a risk to the safety and security of staff, inmates or others, including the inmate himself; and/or posing a risk to public safety, based on the factors set forth in Part C.1(e), above.

2. The circumstances warranting consideration for removal (e.g., threatening, safety, and security) may require the inmate to be immediately removed from the program.

3. The final decision regarding removal of an inmate from any step of the program is made by the Associate Warden responsible for the daily oversight of Unit Management.

4. If an inmate is removed from any step of the program as a program failure, a recommendation will be made by the Step-Down Unit Team as to whether the inmate should be placed in the Intermediate Unit (J/A-Unit), Transitional Unit (B/B Phase I), or a General Population Unit (D, E, F, & G). The determination will be made on a case-by-case basis. However, inmates who are removed from the program and found guilty by the DHO for greatest severity level incident reports (100 series) or high severity level incident reports (200 series) will be placed in the Special Housing Unit and subsequently assigned to an ADX General Population Unit.

5. The inmate will receive written notice that he is being considered for removal from the program. The notice will contain the reasons for removal from the program, unless it is determined that the release of this information could pose a threat to individual safety or institutional security, in which case that limited information may be withheld. The written notice may be made through the Administrative Detention Order form (BP-308(52)). The inmate may submit a written statement for consideration, regarding whether removal from the Program is warranted.

6. The inmate will receive written notice of the decision. The written notice will include the reasons for the decision, unless it is determined the release of this information could pose a threat to individual safety or institutional security, in which case that limited information may be withheld. The notice will also notify the inmate that he may appeal the decision through the Federal Bureau of Prisons' Administrative Remedy Program.

6. **Privilege Incentive Program (PIP)**

**A.** The PIP is offered to all inmates in the General Population and Step-Down units who are on prolonged disciplinary telephone, visiting, and/or commissary restriction. By demonstrating positive programming for 3 consecutive months, these inmates may be considered for an exception to their disciplinary sanction.

**B.** In order to be considered for the PIP, inmates must submit a written request to their respective Unit Manager.

**C.** The purpose of the PIP is provide incentives for inmates who are on prolonged disciplinary restrictions to participate in available programs and maintain clear conduct, furthering the mission of the General Population and Step-Down Program. As inmates participate in programs, it is possible for inmates to have certain privileges restored that were suspeneded through the discipline process. A goal of the PIP is to assist inmates by enhancing and promoting the Federal Bureau of Prisons' reentry initiative, which encourages them to build better community ties with other individuals.

**D.** Inmates must demonstrate positive programming by meeting the following requirements:

1. Paying all disciplinary fines;
2. Maintaining clear disciplinary conduct;
3. Participating in the Inmate Financial Responsibility Program, and/or encumbrance (50/50) program;
4. Maintaining a job with satisfactory work performance, if applicable;
5. Active participation in and satisfactory completion of all programs recommended by the Unit Team;
6. Completion of all ABE/GED, or satisfactory progress towards obtaining a GED as determined by Education staff, or be exempt from the Literacy Program;
7. Obtaining at least one form of identification;
8. Positive overall institution adjustment to include, but not limited to, personal hygiene, cell sanitation with established standards;

9. Positive behavior and respectful conduct towards staff and other inmates.

10. Attendance at all Program Reviews

11. Enrollment and active participation in the Doing Time with the Right Mind program administred through the Unit Team, and Non-Residential Drug and Alcohol Program

**E.** The PIP is a four-level program. The types of incentives are determined by the level. The privileges will be awarded as follows:

| Level | Time Period | Telephone Incentive |
|---|---|---|
| 1 | 3 months meeting requirements<br><br>Incentives are for the next six months, or expiration of sanctions | 1 15 minute phone call per month<br>$40 commissary purchase per month<br>1 social visit per month |
| 2 | 6 months meeting requirements<br><br>Incentives are for the next six months, or expiration of sanctions | 1 15 minute phone call per monthl<br>$80 commissary purchase per month<br>2 social visit per month |
| 3 | 9 months meeting requirements<br><br>Incentives are for the next six months, or expiration of sanctions | 1 15 minute phone call per month<br>$120 commissary purchase per month<br>3 social visit per month |
| 4 | 12 months meeting requirements<br><br>Incentives continue as long as inmate meets eligibility criteria, or expiration of sanctions | 2 15 minute phone calls per month<br>$160 commissary purchase per month<br>4 social visit per month |

**F.** Inmates will be reviewed by their Unit Team every 3 months to determine their appropriateness for additional telephone calls. Inmates who fail to meet the eligibility criteria at this review will return to Level 1. An inmate's failure to maintain clear conduct between 3 months reviews will result in the inmate returning to Level 1.

**DISTRIBUTION:**

**Directives Libraries**
**Correctional Programs Administrator, NCRO**
**AFGE**
**Inmate Law Library**

# Attachment 4
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.*,**
Civil Action No. 14-cv-00041-CMA

**U.S. Department of Justice**
Federal Bureau of Prisons
*United States Penitentiary*
*Florence, Colorado 81226*

August 22, 2017

MEMORANDUM FOR: **ALL STAFF**

FROM: E.A. Earwin, Captain

SUBJECT: Religious Activities Procedures Bravo-Bravo

Effective immediately with the issuance of this memorandum, the following procedures will be implemented in reference to religious activities/adherence within the Bravo-Bravo (BB) Housing Unit.

**A.** Inmates are allowed to utilize Television Room #4 for their religious activities in addition to its current uses. The maximum number of inmates allowed in the room at any time is (8) eight, consistent with range and established security procedures.

**B.** Television Room #4 must be search prior to, and after inmate use. Additionally, inmates will be randomly pat searched, and metal detected, upon their entrance and departure from the room/area.

**C.** Only the range schedule for recreation/indoor activities will be able to utilize Television Room #4. There will be no mixing of ranges or security levels/phases, due to separation and security concerns.

**D.** There will be no exceptions to these procedures without prior written approval from the Captain and notification to the Unit Manager.

**E.** Inmates utilizing Television Room #4 must adhere to all Bureau of Prisons and institutional policies, procedures, and established rules.

Please contact me if there are any questions or concerns.

# Attachment 5
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.***,
Civil Action No. 14-cv-00041-CMA

```
  FLMAG         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     09-19-2017
PAGE 001 OF                                                        11:29:46
     FUNCTION: L-P SCOPE: REG   EQ 02476-748     OUTPUT FORMAT: FULL
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM __________ THRU __________ DT STS: FROM __________ THRU __________
DT STS: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT RDU
DT TDU: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT TRT
STS/REAS: ______ ______ ______ ______ ______ ______ ______ ______ ______ ______
SUBJECTS: ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____ ____
EXTENDED: _ REMEDY LEVEL: _ _            RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ ____       ____       ____       ____       ____       ____
TRACK:  DEPT: __________ __________ __________ __________ __________ __________
      PERSON: ___        ___        ___        ___        ___        ___
        TYPE: ___        ___        ___        ___        ___        ___
EVNT FACL: EQ ____       ____       ____       ____       ____       ____
RCV FACL.: EQ ____       ____       ____       ____       ____       ____
RCV UN/LC: EQ __________ __________ __________ __________ __________ __________
RCV QTR..: EQ __________ __________ __________ __________ __________ __________
ORIG FACL: EQ ____       ____       ____       ____       ____       ____
ORG UN/LC: EQ __________ __________ __________ __________ __________ __________
ORIG QTR.: EQ __________ __________ __________ __________ __________ __________
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

REGNO: 02476-748 NAME: GHAILANI, AHMED
RSP OF...: FLP UNT/LOC/DST: BB/1 QTR.: B07-207L RCV OFC: FLM
REMEDY ID: 666328-F1 SUB1: 13ZM SUB2: DATE RCV: 11-29-2011
UNT RCV..:H QTR RCV.: H03-102L FACL RCV: FLM
UNT ORG..:H QTR ORG.: H03-102L FACL ORG: FLM
EVT FACL.: FLM ACC LEV: RESP DUE:
ABSTRACT.: CHALLENGING EXTENSION OF SAM
STATUS DT: 11-29-2011 STATUS CODE: REJ STATUS REASON: UTF
INCRPTNO.: RCT: EXT: DATE ENTD: 11-29-2011
REMARKS..:

REGNO: 02476-748 NAME: GHAILANI, AHMED
RSP OF...: FLP UNT/LOC/DST: BB/1 QTR.: B07-207L RCV OFC: FLM
REMEDY ID: 669441-F1 SUB1: 13ZM SUB2: DATE RCV: 12-19-2011
UNT RCV..:H QTR RCV.: H03-104L FACL RCV: FLM
UNT ORG..:H QTR ORG.: H03-104L FACL ORG: FLM
EVT FACL.: FLM ACC LEV: FLM 1 NCR 1 BOP 1 RESP DUE: SAT 01-28-2012
ABSTRACT.: CHALLENGING SAM
STATUS DT: 01-13-2012 STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.: RCT: P EXT: P DATE ENTD: 12-20-2011
REMARKS..:

CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA

| DATE DUE | DEPARTMENT | TO | DATE ASSN | TRK TYPE | DATE RETURNED |
|---|---|---|---|---|---|
| THU 12-29-2011 | LGL SVC | CS | 12-20-2011 | INV | 01-13-2012 |

G0002 MORE PAGES TO FOLLOW . . .

```
  FLMAG          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     09-19-2017
PAGE 003 OF      *              FULL SCREEN FORMAT            *     11:29:46


REGNO: 02476-748 NAME: GHAILANI, AHMED
RSP OF...: FLP UNT/LOC/DST: BB/1                QTR.: B07-207L   RCV OFC: NCR
REMEDY ID: 669441-R1      SUB1: 13ZM SUB2:      DATE RCV:   01-30-2012
UNT  RCV..:H            QTR RCV.: H03-104L      FACL RCV: FLM
UNT  ORG..:H            QTR ORG.: H03-104L      FACL ORG: FLM
EVT FACL.: FLM    ACC LEV:  FLM  1 NCR  1 BOP  1   RESP DUE:  WED  02-29-2012
ABSTRACT.: CHALLENGING SAM
STATUS DT: 02-24-2012  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:           RCT: P EXT:   DATE ENTD: 01-30-2012
REMARKS..:



REGNO: 02476-748 NAME: GHAILANI, AHMED
RSP OF...: FLP UNT/LOC/DST: BB/1                QTR.: B07-207L   RCV OFC: BOP
REMEDY ID: 669441-A1      SUB1: 13ZM SUB2:      DATE RCV:   03-19-2012
UNT  RCV..:H            QTR RCV.: H03-103L      FACL RCV: FLM
UNT  ORG..:H            QTR ORG.: H03-104L      FACL ORG: FLM
EVT FACL.: FLM    ACC LEV:  FLM  1 NCR  1 BOP  1   RESP DUE:  FRI  05-18-2012
ABSTRACT.: CHALLENGING SAM
STATUS DT: 11-09-2012  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 04-04-2012
REMARKS..:




G0002       MORE PAGES TO FOLLOW . . .
```

REGNO: 02476-748 NAME: GHAILANI, AHMED
RSP OF...: FLP UNT/LOC/DST: BB/1 QTR.: B07-207L RCV OFC: FLM
REMEDY ID: 758449-F1 SUB1: 13ZM SUB2: DATE RCV: 11-20-2013
UNT RCV..:H QTR RCV.: H01-104L FACL RCV: FLM
UNT ORG..:H QTR ORG.: H01-104L FACL ORG: FLM
EVT FACL.: FLM ACC LEV: FLM 1 RESP DUE: MON 12-30-2013
ABSTRACT.: SAM INMATE; WANTS TO ADVANCE TO PHASE II
STATUS DT: 12-23-2013 STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.: RCT: P EXT: P DATE ENTD: 11-20-2013
REMARKS..:

CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA

| DATE DUE | DEPARTMENT | TO | DATE ASSN | TRK TYPE | DATE RETURNED |
|---|---|---|---|---|---|
| FRI 11-29-2013 | UNT MGT | RK | 11-20-2013 | INV | 12-23-2013 |

REGNO: 02476-748 NAME: GHAILANI, AHMED
RSP OF...: FLP UNT/LOC/DST: BB/1 QTR.: B07-207L RCV OFC: FLM
REMEDY ID: 768925-F1 SUB1: 13ZM SUB2: 15ZM DATE RCV: 02-18-2014
UNT RCV..:H QTR RCV.: H01-104L FACL RCV: FLM
UNT ORG..:H QTR ORG.: H01-104L FACL ORG: FLM
EVT FACL.: FLM ACC LEV: FLM 1 RESP DUE: SUN 03-30-2014
ABSTRACT.: SAM ISSUE; CHALLENGE REMOVAL FROM PHASE II STEP-DOWN
STATUS DT: 03-25-2014 STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.: RCT: P EXT: P DATE ENTD: 02-21-2014
REMARKS..:

CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA

| DATE DUE | DEPARTMENT | TO | DATE ASSN | TRK TYPE | DATE RETURNED |
|---|---|---|---|---|---|
| MON 03-03-2014 | UNT MGT | RK | 02-21-2014 | INV | 03-25-2014 |

G0002 MORE PAGES TO FOLLOW . . .

```
REGNO: 02476-748 NAME: GHAILANI, AHMED
RSP OF...: FLP UNT/LOC/DST: BB/1                QTR.: B07-207L   RCV OFC: FLM
REMEDY ID: 784116-F1      SUB1: 20ZM SUB2:      DATE RCV:   06-18-2014
UNT  RCV..:H            QTR RCV.: H01-104L      FACL RCV: FLM
UNT  ORG..:H            QTR ORG.: H01-104L      FACL ORG: FLM
EVT FACL.: FLM    ACC LEV:  NCR  1                 RESP DUE:
ABSTRACT.: WANTS DHO REPORT TO FILE APPEAL
STATUS DT: 06-23-2014  STATUS CODE: REJ STATUS REASON: WRL
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 06-23-2014
REMARKS..: ALL DHO RELEATED MATTERS (INCLUDING DELAY IN
           RECEIVING DHO REPORT) SHOULD BE FILED TO NCRO.


REGNO: 02476-748 NAME: GHAILANI, AHMED
RSP OF...: FLP UNT/LOC/DST: BB/1                QTR.: B07-207L   RCV OFC: NCR
REMEDY ID: 784116-R1      SUB1: 20ZM SUB2:      DATE RCV:   08-06-2014
UNT  RCV..:H            QTR RCV.: K01-106L      FACL RCV: FLM
UNT  ORG..:H            QTR ORG.: H01-104L      FACL ORG: FLM
EVT FACL.: FLM    ACC LEV:  NCR  1                 RESP DUE:  SUN  10-05-2014
ABSTRACT.: DHO APPEAL, CODE 212
STATUS DT: 10-02-2014  STATUS CODE: CLG STATUS REASON: GRT
INCRPTNO.: 2544470   RCT: P EXT: P DATE ENTD: 08-07-2014
REMARKS..: ALL DHO RELEATED MATTERS (INCLUDING DELAY IN
           RECEIVING DHO REPORT) SHOULD BE FILED TO NCRO.
```

G0002 MORE PAGES TO FOLLOW . . .

FLMAG *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL * 09-19-2017
PAGE 006 OF 006 * FULL SCREEN FORMAT * 11:29:46

REGNO: 02476-748 NAME: GHAILANI, AHMED
RSP OF...: FLP UNT/LOC/DST: BB/1 QTR.: B07-207L RCV OFC: FLM
REMEDY ID: 895392-F1 SUB1: 16ZM SUB2: DATE RCV: 03-17-2017
UNT RCV..:J/A QTR RCV.: J02-216L FACL RCV: FLM
UNT ORG..:J/A QTR ORG.: J02-216L FACL ORG: FLM
EVT FACL.: FLM ACC LEV: FLM 1 RESP DUE: THU 04-06-2017
ABSTRACT.: COMPLAINS OF MAIL DELAYS
STATUS DT: 03-31-2017 STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.: RCT: P EXT: DATE ENTD: 03-17-2017
REMARKS..:

CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA

| DATE DUE | DEPARTMENT | TO | DATE ASSN | TRK TYPE | DATE RETURNED |
|---|---|---|---|---|---|
| MON 03-27-2017 | SIS | TEC | 03-17-2017 | INV | 03-31-2017 |

9 REMEDY SUBMISSION(S) SELECTED
G0000 TRANSACTION SUCCESSFULLY COMPLETED

# Attachment 6
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.***,
Civil Action No. 14-cv-00041-CMA

U.S. Department of Justice

Federal Bureau of Prisons

# Central Office Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: GHAILANI AHMED K. — 02476-748 — H — FLORENCE ADMAX

LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

**Part A - REASON FOR APPEAL**

I am dissatisfied with the reason of denial to my Regional Administration Remedy Appeal.

March 07, 2012

DATE

A. Ghaily.

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE

GENERAL COUNSEL

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE

CASE NUMBER:

**Part C - RECEIPT**

CASE NUMBER:

Return to:

LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT:

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL



USP LVN

BP-231(13)
JUNE 2002

RECEIVED
DEC 03 2012
ADX Warden's Offi

**Administrative Remedy No. 669441-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal, in which you request removal of your Special Administrative Measures (SAM).

Our review of the matter reveals the Warden and the Regional Director adequately responded to this issue. Federal regulation 28 CFR § 501.3 is the authority for the imposition of SAM. Pursuant to this regulation, the Attorney General may impose SAM if there is substantial risk an inmate's communication or contact with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. As the Attorney General has determined, your particular SAM are necessary to ensure your communications do not place the safety or security of the public, other inmates, or staff at risk, and they will not be removed at this time. We note in this appeal, you make no allegation contesting the manner in which your SAM are imposed. Staff will continue to closely monitor your case, and you will be advised of any changes.

Accordingly, your appeal is denied.

November 9, 2012
Date

Harrell Watts, Administrator
National Inmate Appeals

U.S. Department of Justice
Federal Bureau of Prisons 669441

# Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Ghailani Ahmed K. | 02476-748 | H | Florence ADX
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A - REASON FOR APPEAL**

I am not satisfied with the response to my request for Administrative Remedy because it does not address any basis of my request. Accordingly, I hereby reinstate and incorporate those complaints into this appeal and simply requesting removal of all onerous SAM restrictions imposed on me.

Jan. 22, 2012
DATE

[signature]
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE

CASE NUMBER: ____________

**Part C - RECEIPT**

CASE NUMBER: ____________

Return to: ____________
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: ____________

DATE

SIGNATURE, RECIPIENT OF REGIONAL APPEAL



USP LVN

BP-230(13)
JUNE 2002

U.S. Department of Justice
Federal Bureau of Prisons
North Central Regional Office

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Administrative Remedy Number:** 669441-R1

This is in response to your Regional Administrative Remedy Appeal received in this office on January 30, 2012, in which you object to the Special Administrative Measures (SAMs) imposed on you. For relief, you request removal of your SAMs restrictions.

We have reviewed your appeal and the Warden's response dated January 13, 2012. As indicated, the United States Attorney General (USAG) may impose SAMs if there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. These SAMs ordinarily may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism. While the Bureau of Prisons neither imposes nor rescinds SAMs, it implements the restrictions and can accommodate specific requests relating to the restrictions. As the USAG has determined your particular SAMs are necessary, they will not be removed or modified at this time and will remain in effect until such time the USAG determines they are no longer warranted. Records indicate you were provided notice of your SAMs renewal on June 22, 2011. Prior to this renewal, you were afforded an opportunity to provide input into your SAMs and your input was forwarded to the appropriate authority for consideration. Accordingly, the institution's decision is supported.

Based on the above information, your Regional Administrative Remedy Appeal is denied.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

2/24/12
Date

Amber L. Nelson, Acting Regional Director

RECEIVED
MAR 05 2012
Warden's Office

**BP-229 Response** **Case Number: 669441-F1**

Your Request for Administrative Remedy dated December 15, 2011, and received in this office on December 19, 2011, has been reviewed. You are contesting the basis used to renew your Special Administrative Measures (SAM).

A review of the issue raised in your Request for Administrative Remedy has been conducted. The result of the review revealed you are given a meaningful process in which to raise your concerns and have them reviewed and addressed by the individuals that review your SAM for renewal. At approximately 120 days prior to your renewal date, you are given the ability to submit your concerns in writing to your Unit Team. At approximately 90 days prior to renewal, you are given the opportunity to meet with the H-Unit Manager, and members of the Legal Department. The meeting was offered to you on June 16, 2011, which you refused to attend. At the conclusion of this meeting, all of your written submissions and the notes were forwarded to the appropriate law enforcement agency and the responsible U.S. Attorney's Office for review and consideration prior to a determination as to whether or not your SAM should be renewed, modified, or discontinued. It was determined the information was properly considered and that your SAM are appropriate at this time. In addition to this process, you were provided with notification of the extension of your SAM on June 22, 2011, which included the basis for the extension of your SAM. The fact that you disagree with the basis for your SAM, does not mean that your SAMs are not properly extended.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492

[signature]
Blake R. Davis, Warden

1/13/12
Date

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: GHAILANI, AHMED K. | 02476-748 | H | FLORENCE ADX |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

For the following reasons, I respectfully request for removal of all ongoing restrictions imposed on me in accordance with Special Administrative Measures (S.A.M.)

① For over seven years I have been incarcerated under federal custody. For all this time I have commited absolutely nothing that suggested that there continues to be substantial risk.

DEC. 15, 2011 — DATE

A. Ghay — SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED

DEC 1 9 2011

ADX AW Office

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

CASE NUMBER: 669441-F1

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE

CASE NUMBER:

**Part C– RECEIPT**

Return to:

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT:

DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)



BP-229(13)
APRIL 1982

USP LVN

(2) The ongoing S.A.M's restrictions imposed on me without meaningful proceeding or due process of law where I might challenged the imposition of such punishment or secure my right to be free from this abuse.

(3) The ongoing S.A.M's restrictions imposed on me based solely on hypothetical speculations and analytical assesments that are unsupported by credible proof.

(4) The ongoing S.A.M's restrictions are additional punishment on me above that imposed by the sentencing judicial court.

(5) Each and every S.A.M's restriction is relevant to quastions about negative psychological impact they have on inmate if imposed for prolonged duration of time. And Each and every restriction is violating my fundamental constitution rights. Those rights including 1st, 5th, 6th, 8th and 14th amendments.

Respectfully submitted,

A. Ghailani

Ahmed K. Ghailani.

FCC1330.16A
**Administrative Remedy Program**
**Attachment 1**

**FEDERAL CORRECTIONAL COMPLEX**
**FLORENCE, COLORADO**
**INFORMAL RESOLUTION FORM**

Inmate Name: GHAILANI, AHMED K. Reg. No.: 02476-748
Unit: H Date: DEC. 07, 2011

**NOTICE TO INMATE**: You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), you **must** attempt to informally resolve your complaint through your Correctional Counselor. Please follow the three steps listed below:

1. **State Your complaint:** I respectfully seeking the removal of all special restrictions imposed on me in accordance with Special Administrative Measures (S.A.M.) because they are violating my fundamental constitution rights.

   **(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))**

2. **State what actions you have made to informally resolve your complaint:** I made this same request to the counselor.

3. **State what resolution you expect:** I expect my request will be granted.

Inmate's Signature: A. Ghay. Date: Dec. 07, 2011

**Correctional Counselor's Comments (Steps to Resolve):** Spoke with the Legal Dept. They Stated you Current SAMS restrictions Have been deemed appropriate and Constitutionally Sound by the Attorney General of the U.S.

**Counselor's Signature:** [signature] **Date:** 12-8-11
**Unit Manager's Review:** [signature] **Date:** 12-13-11
**Informally Resolved:** **Date:**

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 12-7-11 | 12-8-11 | 12-13-11 | 12-15-11 | |
| TIME | | | | | |
| COUNSELOR | SK | SK | SK | SK | |

# Attachment 7
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.***,
Civil Action No. 14-cv-00041-CMA

BP-229 Response

Case Number: 895392-F1

Your Request for Administrative Remedy dated March 17, 2017, and received in this office March 17, 2017, has been reviewed. Specifically, you state your mail from courts and United States Attorneys have been delayed for no reason, and as a result put you in disadvantage in all court proceedings

A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review revealed ADX staff attempt to process court mail and mail from United States Attorneys as quickly as possible, usually the same or next day after arrival . The urgency and importance of these types of mail are understood and respected. SIS staff will coordinate with R&D staff to try to keep the delays to a minimum.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

Jack Fox, Complex Warden

3/31/17
Date

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

# REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: Ghailani Ahmed K. | 02476-748 | J-Unit | ADX |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

THE RESPOND IS DISSATISFIED, BECAUSE WHILE IT EXPLAIN WHY MY MAIL WAS TREATED AS NON-LEGAL MAIL, IT DOES NOT EXPLAIN WHY MY MAIL HAS TO BE DELAYED FOR OVER THREE WEEKS.

MARCH 17, 2017
DATE

[signature]
SIGNATURE OF REQUESTER

**Part B- RESPONSE**

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE — CASE NUMBER: 895392-F1

CASE NUMBER:

**Part C- RECEIPT**

Return to:

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT:

DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)



USP LVN — PRINTED ON RECYCLED PAPER — BP-229(13) APRIL 1982

# FEDERAL CORRECTIONAL COMPLEX
# FLORENCE, COLORADO
# INFORMAL RESOLUTION FORM

***Notice to Inmate: Inmates have the responsibility to use this Program in Good Faith and in an Honest and Straightforward manner.***

Inmate Name: AHMED K. GHAILANI Reg. No. 02476-748
Unit: J-UNIT Date: 3/6/2017

**NOTICE TO INMATE**: You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), you must attempt to informally resolve your complaint through your Correctional Counselor. Please follow the steps listed below:

1. **State your complaint (single complaint or a reasonable number of closely related issues):**

MY MAIL FROM COURTS AND FROM UNITED STATES ATTORNEYS HAVE BEEN DELAYED FOR NO REASON, AND AS A RESULT PUT ME IN DISADVANTAGE IN EVERY COURT PROCEEDINGS.

**(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))**

2. **State what resolution you expect:** EXPLANATION AS TO WHY MY MAIL HAS BEEN DELAYED AND WHAT AM I REQUIRED TO DO TO PREVENT THE DELAY?

Inmate's Signature: [signature] Date: MARCH 6, 2017

Counselor's Signature: [signature] Date: 3-6-17

Department Involved: ______ Date Assigned: ______ Due Date: ______

**Department's Response regarding Complaint:** In order to be considered legal mail it must be marked open in the presence of the inmate. The letter must have senders full name, title and specific opening instructions. Your mail did not meet the requirements for legal mail so it was treated as general correspondence.

**Department Head Signature:** [signature] **Date:** 3/8/17
**Unit Manager's Review:** ______ **Date:** ______
**Informally Resolved:** ______ **Date:** ______

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 3-6-17 | 3-8-17 | 3/15/17 | | |
| TIME | | | | | |
| COUNSELOR | [signature] | [signature] | [signature] | | |

# Attachment 8
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.***,
Civil Action No. 14-cv-00041-CMA

U.S. Department of Justice

Federal Bureau of Prisons

# Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: GHAILANI AHMED K. (LAST NAME, FIRST, MIDDLE INITIAL) | 02476-748 (REG. NO.) | K01-106 (UNIT) | ADX FLORENCE (INSTITUTION)

**Part A - REASON FOR APPEAL**

On February 10, 2014, I received an Incident Report charging me on violation of code 212 - Engaging in or encoraging a group demonstration - for missing 11 consecutive meals. Sometimes latter in March I was informed that on March 14, 2014 there was a hearing and that I was found guilty on violation of code 212, and that I was punished to Disciplinary Sanctions

31st of July, 2014
DATE

A. Ghay.
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
AUG 06 2014
REGIONAL DIRECTOR'S OFFICE
NORTH CENTRAL REGION

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 784116-R1

**Part C - RECEIPT**

CASE NUMBER: ______

Return to: ______
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: ______

DATE

SIGNATURE, RECIPIENT OF REGIONAL APPEAL



UPN LVN

BP-230(13)

for 15 days and lost of privilages on commisary and visits for 30 days. I was not informed on the hearing before it happend, and I was not given an opportunity to defend my self. Since then I have been requesting for Discipline Hearing Officer Report (DHO Report) so that I could appeal their decision without my presence, but all my request were in vain. When I filed Administrative Remedies BP 8 and BP 9 I was informed that it was wrong level of Administrative Remedy and that I was supposed to file to Regional Office.

Therefore I am submiting this as a request for DHO Report so I could appeal, or as an appeal against ADX officials who are responsible for these conducts.

Respectfully submitted on this day of 31st July, 2014.

A. Ghay.

Ahmed K. Ghailani
# 02476-748
ADX Florence
P.O. Box 8500
Florence, CO 81226-8500

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Administrative Remedy Number: 784116-R1**

This is in response to your Regional Administrative Remedy Appeal received on August 6, 2014, regarding incident report #2544470. You were issued an incident report for the prohibited act of Code #212, Engaging or Encouraging a Group Demonstration. You appeal this decision stating the Discipline Hearing Officer (DHO) did not conduct an in-person hearing with you and you have not been issued the DHO Report from the hearing. You request to receive the DHO Report from the hearing.

A procedural error was discovered. To ensure compliance with Program Statement 5270.09, Inmate Discipline Program, a decision to expunge the incident report was made by the Discipline Hearing Administrator.

Based on the above information, your Regional Administrative Remedy Appeal is granted.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

10-2-14
Date

Paul M. Laird, Regional Director

RECEIVED
OCT 08 2014
ADX Warden's Office

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JUNE 23, 2014

FROM: ADMINISTRATIVE REMEDY COORDINATOR
FLORENCE ADMAX USP

TO : AHMED KHALFAN GHAILANI, 02476-748
FLORENCE ADMAX USP UNT: H QTR: H01-104L
PO BOX 8500
FLORENCE, CO 81226

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

| | |
|---|---|
| REMEDY ID | : 784116-F1 ADMINISTRATIVE REMEDY REQUEST |
| DATE RECEIVED | : JUNE 18, 2014 |
| SUBJECT 1 | : OTHER DHO RELATED MATTERS |
| SUBJECT 2 | : |
| INCIDENT RPT NO: | |

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE WRONG LEVEL. YOU SHOULD HAVE FILED AT THE INSTITUTION, REGIONAL OFFICE, OR CENTRAL OFFICE LEVEL.

REMARKS : ALL DHO RELEATED MATTERS (INCLUDING DELAY IN RECEIVING DHO REPORT) SHOULD BE FILED TO NCRO.

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: GHAILANI, AHMED K. | 02476-748 | H01-104 | ADX FLORENCE |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

I was punished without hearing, and for the past three months I have been asking for the DHO report so I could appeal the DHO's decision. I believe this is the right level to file this request because DHO hearing conducted here and I could not obtain the reper from regional office.

June 17, 2014 — DATE

A. Ghay. — SIGNATURE OF REQUESTER

**Part B- RESPONSE**

RECEIVED

JUN 18 2014

ADX AW Office

DATE — WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE** CASE NUMBER: 784116-F1

CASE NUMBER:

**Part C- RECEIPT**

Return to:

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|
| | | | |

SUBJECT:

DATE — RECIPIENT'S SIGNATURE (STAFF MEMBER)



USP LVN

PRINTED ON RECYCLED PAPER

BP-229(13) APRIL 1982

# UNITED STATES PENITENTIARY – ADMINISTRATIVE MAXIMUM
## FLORENCE, COLORADO
## INFORMAL RESOLUTION FORM

***Notice to Inmate: Inmates have the responsibility to use this Program in Good Faith and in an Honest and Straightforward manner.***

Inmate Name: ~~02476-748~~ GHAILANI Reg. No. 02476-748
Unit: H-A-104 Date: 6/6/2014

You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), **you must attempt to informally resolve your complaint** through your Correctional Counselor. Please follow the three steps listed below:

1. **State your complaint:** I have been punished for violation of Code that I did not commit and without hearing. I am requesting for DHO report so that I could appeal.

   **(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))**

2. **Briefly State what resolution you expect:**

**Inmate's Signature:** A. Ghaily. **Date:** 6/6/2014

**Counselor's Signature:** [signature] **Date:** 6-6-14

**Department Involved:** ______ **Date Assigned:** ______ **Date Due:** ______

**Department Response regarding Complaint:** ~~I spoke with the DHO regarding this matter. He stated he was in the process of preparing your DHO report and you should be receiving this in the near future.~~ You may file BP-10 to region when response is given. BP-8 is wrong level to file

**Dept. Hd. Signature (Complaint):** ______ **Date:** ______
**Unit Manager's Review:** [signature] **Date:** 6/11/14
**Informally Resolved:** ______ **Date:** ______

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 6-4-14 | 6-6-14 | 6-5-14 | 6-17-14 | |
| TIME | | | | | |
| COUNSELOR | S.K | S.K | S.K | S.K | |

# Attachment 9
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.***,
Civil Action No. 14-cv-00041-CMA

**BP-229 Response** **Case Number: 768925-F1**

Your Request for Administrative Remedy dated February 13, 2014, and received in this office February 18, 2014, has been reviewed. Specifically, you request a hearing be conducted regarding your most recent Phase Two removal.

A review of the issue raised in your Request for Administrative Remedy has been conducted. The result of the review reveals your Unit Team will schedule a meeting with you to provide information of the duration of your current phase status. Your Unit Team will provide you the date and time this review will occur.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

D. Berkebile, Warden

3-25-14
Date

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: GHAILANI, AHMED K. | 02476-748 | H01-104L | ADX
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A- INMATE REQUEST**

I have been removed from phase 2 because I have missed some meals and you considered my conduct to be detrimental to the safety, security, and orderly running of institution. As a result I lost some privilages. Accordingly, I request for a hearing where I could defend myself or to know the duration of this punishment.

FEB. 13, 2014
DATE

A. Ghay.
SIGNATURE OF REQUESTER

**Part B- RESPONSE**

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE

CASE NUMBER: 768925-F1

CASE NUMBER:

**Part C- RECEIPT**

Return to:
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT:

DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)



USP LVN

PRINTED ON RECYCLED PAPER

BP-229(13)
APRIL 1982

**FCC1330.16A**
**Administrative Remedy Program**
**Attachment 1**

**FEDERAL CORRECTIONAL COMPLEX**
**FLORENCE, COLORADO**
**INFORMAL RESOLUTION FORM**

Inmate Name: GHAILANI, AHMED K. Reg. No.: 02476-748
Unit: H01-104L Date: FEBRUARY 04, 2014

**NOTICE TO INMATE**: You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), you **must** attempt to informally resolve your complaint through your Correctional Counselor. Please follow the three steps listed below:

1. **State Your complaint:** Today I received a notice telling me that I have been recommended to be removed from Phase Two because I participated in protest by missing some meals and being placed on hunger strike.

**(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))**

2. **State what actions you have made to informally resolve your complaint:**

3. **State what resolution you expect:** Please explain to me if missing some meals or participate in hunger srike is violation of any rule or regulation.

Inmate's Signature: [signature] Date: FEB. 04, 2014

**Correctional Counselor's Comments (Steps to Resolve):** You were removed from Phase 2, because your conduct was ~~cond~~ considered detrimental to the Safety, Security and orderly running of institution. Also see Attachment "

**Counselor's Signature:** [signature] **Date:** 2-5-14
**Unit Manager's Review:** [signature] for UM **Date:** 2-11-2014
**Informally Resolved:** **Date:**

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 2-4-14 | 2-5-14 | 2-13-14 | 2/14/14 | |
| TIME | | | | | |
| COUNSELOR | S.K | SK | SK | SK | |

You were provided a Notice of Unit teams reccomendation of removal From phase 2 to phase 1. You may write The Associate warden directly with your objections to this reccomendation.

S. Hansen
H- Counselor

# Attachment 10
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.***,
Civil Action No. 14-cv-00041-CMA

**BP-229 Response** **Case Number: 758449-F1**

Your Request for Administrative Remedy dated November 18, 2013, and received in this office November 20, 2013, has been reviewed. You request an explanation of the reason you were not advanced in the Special Security Unit Phase Program within the past fourteen months.

A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review reveals you were reviewed for Phase Two in October 2012 and May 2013, which the Program Screening Committee indicated additional time was needed to determine whether you could function successfully in a less restrictive environment without posing a threat to the security or orderly running of the facility. This was based on your participation in a protest by missing consecutive meals between the dates of September 2, 2012, through September 28, 2012. The result of your actions placed you on hunger strike status. The Program Screening Committee did not believe this type of behavior warranted the additional privileges afforded to inmates in Phase Two. Therefore, you were denied advancement from October 2012 to October 2013.

During your November 2013 Phase Review, it was been determined you met the requirements for advancement to Phase Two, and you were approved on November 19, 2013.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492

D. Berkebile, Warden

12-23-13
Date

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: GHAILANI, AHMED K. — 02476-748 — H01-104 — ADX-FLORENCE

LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

**Part A- INMATE REQUEST**

I understand that this month I will be reviewed for phase two, I may or maynot qualify for it. I only request for the reason why for the past 14 months I could not qualify for advancement to phase two?

NOV. 18, 2013

DATE

A. Ghay.

SIGNATURE OF REQUESTER

**Part B- RESPONSE**

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE

CASE NUMBER: 758449-F1

CASE NUMBER:

**Part C- RECEIPT**

Return to:

LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT:

DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)



USP LVN

PRINTED ON RECYCLED PAPER

BP-229(13)
APRIL 1982

FCC1330.16A
Administrative Remedy Program
Attachment 1

**FEDERAL CORRECTIONAL COMPLEX**
**FLORENCE, COLORADO**
**INFORMAL RESOLUTION FORM**

Inmate Name: GHAILANI, AHMED K. Reg. No.: 02476-748
Unit: H01 - 104 Date: NOVEMBER 12, 2013

**NOTICE TO INMATE**: You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), you **must** attempt to informally resolve your complaint through your Correctional Counselor. Please follow the three steps listed below:

1. **State Your complaint:** I have been on phase one for over 14 months now, and I have not been ~~notied~~ notified why I could not advance to phase two.

**(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))**

2. **State what actions you have made to informally resolve your complaint:** I talked ~~to~~ to the Counselor.

3. **State what resolution you expect:** I expect notification why I am not eligible for advancement to phase two.

Inmate's Signature: A. Ghai Date: NOVEMBER 12, 2013

**Correctional Counselor's Comments (Steps to Resolve):** You are on the List to be reviewed For phase 2 This Month Nov. 2013

**Counselor's Signature:** [signature] **Date:** 11-13-13
**Unit Manager's Review:** [signature] **Date:** 11/13/13
**Informally Resolved:** **Date:**

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 11-8-13 | 11-13-13 | 11-15-13 | 11-19-13 | |
| TIME | | | | | |
| COUNSELOR | S.K | SK | SK | SK | |

# Attachment 11
# Declaration of Todd Chapman

***Ghailani v. Sessions, et al.*,**
Civil Action No. 14-cv-00041-CMA

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 29, 2011

FROM: ADMINISTRATIVE REMEDY COORDINATOR
FLORENCE ADMAX USP

TO : AHMED KHALFAN GHAILANI, 02476-748
FLORENCE ADMAX USP UNT: H QTR: H03-102L
PO BOX 8500
FLORENCE, CO 81226

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID : 666328-F1 ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED : NOVEMBER 29, 2011
SUBJECT 1 : OTHER CLASSIFICATION MATTERS
SUBJECT 2 :
INCIDENT RPT NO:

REJECT REASON 1: YOUR REQUEST IS UNTIMELY. INSTITUTION AND CCC REQUESTS (BP-09) MUST BE RECEIVED W/20 DAYS OF THE EVENT COMPLAINED ABOUT.

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: GHAILANI, AHMED K — 02476-748 — H — ADX
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

**Part A- INMATE REQUEST**

On June 22, 2011 I received notification of extention of Special Administrative Measures (S.A.M).
While the sentence I received after my trial was to serve at high security prison, to use reasons to bring me to serve at maximum security prison and for the same reasons to justify the extention of S.A.M seems to be not only disturbing & inconsistent, but also fundamentaly unfair and

Nov. 22, 2011 — A. Ghay.
DATE — SIGNATURE OF REQUESTER

**Part B- RESPONSE**

RECEIVED
NOV 29 2011
ADX AW Office

DATE — WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE** — CASE NUMBER: ______

CASE NUMBER: ______

**Part C- RECEIPT**

Return to: ______
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT: ______

DATE — RECIPIENT'S SIGNATURE (STAFF MEMBER)



USP LVN — BP-229(13) APRIL 1982

Legally unjust.

Each restriction of the S.A.M is relevant to questions about how an inmate be on S.A.M for prolonged duration of time might have affected his concurrent and subsequent mental and phisical states.

For over seven years I have been under Federal custody and for all this time I have ~~comit~~ commited absolutely nothing that suggest there continues to be substantial risk. While Attorney General has the authority to impliment S.A.M, to do so by relying only on analytical assesments that are only speculations and unsupported by credible proof is abusive of that authority and violation of my Constitution rights. Those rights including 1st, 5th, 6th, 8th and 14th ammendment.

I was put in this punishment without judicial proceeding where I might challenged the impositio of this punishment or secure my right to be free from this abuse.

Therefore, for the above reasons, I request the S.A.M to be terminated or modified to the point that it will not violet my Constitution rights or to have judicial review on this matter.

Respectfully submitted,

A. Ghaily.

Ahmed K. Ghailani

FCC1330.16A
Administrative Remedy Program
Attachment 1

**FEDERAL CORRECTIONAL COMPLEX**
**FLORENCE, COLORADO**
**INFORMAL RESOLUTION FORM**

Inmate Name: GHAILANI, AHMED K. Reg. No.: 02476-748
Unit: FLM-H-A Date: NOV. 14, 2011

**NOTICE TO INMATE**: You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), you **must** attempt to informally resolve your complaint through your Correctional Counselor. Please follow the three steps listed below:

1. **State Your complaint:** I hereby respectfully request from the administration to withdraw the Special Administrative Measures (S.A.M) on me, because its extention is unlawful and also it is violating my Constitution rights.

**(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))**

2. **State what actions you have made to informally resolve your complaint:** On May 19, 2011 before the extention, I made request for withdrawal or modification of the S.A.M.

3. **State what resolution you expect:** I hope, the administration will terminate or modify the SAM to the point that it will not violet any of my Constitution rights.

Inmate's Signature: A. Ghaily. Date: Nov. 14, 2011

**Correctional Counselor's Comments (Steps to Resolve):** Spoke with the Legal Dept, They stated your Current SAMS restrictions Have been Deemed appropriate and Constitutionally Sound by The attorney General of the United States.

**Counselor's Signature:** [signature] **Date:** 11-15-11
**Unit Manager's Review:** [signature] **Date:** 11-15-11
**Informally Resolved:** **Date:**

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 11-8-11 | 11-15-11 | 11-18-11 | 11-22-11 | |
| TIME | | | | | |
| COUNSELOR | SK | SK | SK | SK | |